96 P.3d 242

**STATE of Hawai'i, Plaintiff–Appellee**

v.

**John R. GUIDRY, Defendant–Appellant.**

No. 22727.

Supreme Court of Hawai'i.

Aug. 6, 2004.

Deborah L. Kim, Deputy Public Defender, on the briefs, for defendant-appellant.

Mangmang Qiu Brown, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

In *State v. Bani*, 97 Hawai'i 285, 36 P.3d 1255 (2001), this court invalidated the notification or disclosure element of Hawai'i Revised Statutes (HRS) § 846E–3 (Supp.2001), which authorized public agencies to release relevant and necessary information regarding a convicted sex offender. *Id.* at 287, 36 P.3d at 1257. It was held that "the absence of any procedural safeguards in the public notification provision of HRS chapter 846E renders the public notification portion of HRS chapter 846E unconstitutional, void, and unenforceable." *Id.* Following our holding in *Bani*, HRS § 846E–3, entitled "Access to registration information," was amended to include, *inter alia*, a hearing to provide a sex offender with the opportunity to present evidence to show that "the offender does not represent a threat to the community and that public release of relevant information is not necessary." HRS § 846E–3(d) (Supp.2003).

With respect to the registration aspect of the statute, which mandates lifetime registration and monitoring of sex offenders, *Bani* concluded that "[t]here is nothing inherent in the act of registering that imposes on any of Bani's protected liberty interests." *Bani*, 97 Hawai'i at 292, 36 P.3d at 1262. At the time *Bani* was decided, HRS § 846E–2(a) (Supp.2001) stated that "[a] sex offender shall register with the attorney general and comply with the provisions of this chapter for life." The same statutory language is at issue in the instant case. However, in *Bani* this court did not address the issue of lifetime registration but, rather, focused on the initial

act of registering in the context of notification. The ruling of the first circuit court (the court) in the case at hand directly questions the constitutionality of absolute lifetime registration requirement in isolation and whether such requirements trigger procedural due process protections under the Hawai'i Constitution.

For the reasons discussed herein, we hold that the lifetime registration component of the Hawai'i sex offender registration statute implicates a protected liberty interest under the Hawai'i State Constitution, article I, section V and requires that minimum requirements of due process—notice and the opportunity to be heard—be afforded to convicted sex offenders. Such a proceeding may be instituted by a sex offender in a special proceeding. We hold further, that Defendant–Appellant John R. Guidry (Guidry) is not entitled to relief on other grounds asserted by him.

We cannot agree, however, that a hearing prior to registration is mandated as contended by Guidry. In *Bani*, this court said that the act of registration, itself, does not impose on a defendant's protected liberty interest. *Bani*, 97 Hawai'i at 292, 36 P.3d at 1262. Because of the nature of the absolute lifetime requirements in HRS chapter 846E, due process does not require that a hearing be held at any specific time. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.*

The record does not indicate that Guidry filed an action for such a hearing. In light of the foregoing, we affirm the court's June 3, 1999 order denying Guidry's motion to dismiss and its judgment of conviction and sentence under HRS § 846E–6 for Guidry's failure to comply with registration requirements.

I.

In 1992, Guidry was convicted of sexual assault in the second degree, a class B felony.[1] Guidry was required to register under

---

1. The indictment did not indicate if Guidry was charged under HRS § 707–731(1)(a) (Supp.2001) or 707–731(1)(b) (Supp.2001), both which fall within the definition of "sex offender" under

HRS § 486E–1. None of the parties challenge Guidry's status as a sex offender under HRS Chapter 846E–1.

HRS § 846E–6 as a result of his 1992 conviction.

On March 24, 1999, Guidry was charged as follows: Count I, Failure to Register Change of Registration Information as a Sex Offender, HRS § 846E–6 (Supp.2001), and Counts II–IV, Sexual Assault in the Fourth Degree, HRS § 707–733(1)(b) (Supp.2001). On April 27, 1999, Guidry filed a Motion for Severance of Charges that was granted by the court.[2] Thus, the failure to register charge was severed and is reviewed separately in this appeal.

On May 3, 1999, Guidry filed a Motion to Dismiss Count I of the Indictment Based on the Unconstitutionality of HRS chapter 846E (motion to dismiss). On June 3, 1999, the court[3] filed its order denying the motion to dismiss (1999 Order).

In the 1999 Order, the court "incorporate[d] by reference the following passages" of the order "filed on December 15, 1998, in Cr. No. 98–0072, *State of Hawai'i v. Russell Akina*," as follows:

### Conclusions of Law

I. The Statute—HRS Chapter 846E "Sex Offender Registration and Notification"

. . . .

### III. CLAIMS BASED ON DEFENDANT'S LIBERTY INTERESTS

V–H. However, based on the record before it, the Court finds that the *requirement of lifetime registration with no possible avenue for relief violates the procedural due process rights* of the defendant. . . .

V–I. *Defendant's remedy, however, is not dismissal of his case based on these grounds.* The failure to report his change in address is as relevant to the registration portion of the statute as it is to the notification portion. Even if, in a later action, the notification provisions of the statute are enjoined until some remedial legislative action, defendant's duty to report changes in residence would continue. *The twin problems of lifetime reporting and Internet access must be addressed by an action for injunctive relief. The prayer for relief is not before this Court.*

V–J. The Defendant's Motion to Dismiss for Violation of Defendant's Procedural Due Process Rights, filed April 14, 1998, and Motion to Dismiss for Violation of Article I, Section 6 of Hawai'i Constitution and Violation of Fundamental Right to Privacy under the United States Constitution, filed April 14, 1998 are denied.

(Emphases added.)

As such, although the court concluded that compelling lifetime registration with no possible avenue for relief violated procedural due process, the court decided that Guidry was not entitled to a dismissal of the charges. Instead, the court noted that Guidry could seek injunctive relief from the unconstitutional portions of the statute and denied the motion.

Accordingly, Guidry's case proceeded to trial.[4] The jury found Guidry guilty as charged, and the court sentenced Guidry to five years' probation, as entered in the August 5, 1999 notice of entry of the judgment.[5]

## II.

The subject of the instant appeal is limited to Guidry's motion to dismiss, based on the unconstitutionality of HRS chapter 846E. On appeal, Guidry contends that HRS chapter 846E violates: (1) the procedural due process requirements of the United States and Hawai'i Constitutions;[6] (2) the prohibition

---

2. The Honorable Victoria S. Marks presided.

3. The Honorable Frances Q.F. Wong presided.

4. The Honorable Richard K. Perkins presided over the jury trial.

5. The indictment states that "[o]n or about the [1st] day of September, 1998, to and including the 18th day of March 1999, . . . [Guidry] as a sex offender, did intentionally and knowingly fail to notify the Attorney General of a new residence in writing within three working days of changing residence, thereby committing the offense of Failure to Register Change of Registration Information as a Sex Offender[.]" As such, HRS chapter 846E (Supp.2001) applies and is discussed herein and we do not address any subsequent amendments to HRS chapter 846E.

6. We do not consider the due process claim as to the notification issue as that was decided in *Bani.*

against ex post facto laws of the United States and Hawai'i Constitutions; (3) the cruel and unusual punishment clauses of the United States and Hawai'i Constitutions; (4) the right to privacy under the United States and Hawai'i Constitutions; and (5) the equal protection clauses of the United States and Hawai'i Constitutions. Guidry also argues that because the court concluded that the lifetime registration requirement and the overly-broad notification provision violated procedural due process, the court should have granted Guidry's Motion to Dismiss.

In response, Plaintiff–Appellee State of Hawai'i (the prosecution) argues that HRS chapter 846E does not violate the due process clauses of the United States or the Hawai'i Constitutions, because: (1) Guidry has not made a sufficient preliminary showing to sustain a procedural due process claim that he has a protected interest within the meaning of the due process clause; (2) the procedures at issue satisfy due process; (3)

7. The prosecution also argues that HRS chapter 846E does not violate: (1) the prohibition against ex post facto laws; (2) the prohibition against cruel and unusual punishment; (3) the right to privacy; or (4) equal protection.

8. In its entirety, HRS § 846E-1 defines a "sex offender" as:

(1) Any person convicted of a "sexually violent offense" or a "criminal offense against a victim who is a minor"; or

(2) Any person who is charged with a "sexually violent offense" or a "criminal offense against a victim who is a minor" and is found unfit to proceed or who is acquitted due to a physical or mental disease, disorder, or defect pursuant to chapter 704.

9. HRS § 846E-1 provides in relevant part, the following definitions:

"Criminal offense against a victim who is a minor" means any criminal offense that consists of:

(1) Kidnapping of a minor, except by a parent;

(2) Unlawful imprisonment in the first degree of a minor, except by a parent;

(3) Criminal sexual conduct toward a minor;

(4) Solicitation of a minor who is less than fourteen years old to engage in sexual conduct;

(5) Use of a minor in a sexual performance;

(6) Solicitation of a minor to practice prostitution;

(7) Any conduct that by its nature is a sexual offense against a minor, but excludes

the private interests affected by the registration and notification are based on speculation, and are derived from his conviction rather than the operation of HRS chapter 846E; (4) in "targeting only the most dangerous of sex offenders as subject to its registration and notification requirements," HRS chapter 846E poses no significant risk of an erroneous deprivation; and (5) the government has a compelling interest in protecting the public from harm cause by sex offenders.[7]

### III.

HRS chapter 846E applies to a convicted sex offender,[8] defined as "[a]ny person convicted of a 'sexually violent offense' or a 'criminal offense against a victim who is a minor[.]'" HRS § 846E-1.[9] This definition encompasses the full range of sex crimes from the most severe cases of rape to misdemeanor sexual assault.[10]

conduct that is criminal only because of the age of the victim, as provided in section 707–730(1)(b) or section 707–732(1)(b), if the perpetrator is eighteen years of age or younger;

(8) An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraphs (1) through (7); or

(9) Any state, federal, or military law similar to paragraphs (1) through (8).

. . . .

"Sexually violent offense" means an act committed on, before, or after July 1, 1997, that is:

(1) An act defined in section 707–730(1)(a), 707–730(1)(b), 707–731(1)(a), 707–731(1)(b), 707–732(1)(a), 707–732(1)(e), and 707–733(1)(a);

(2) A criminal offense that is comparable to a sexually violent offense as defined in paragraph (1) or any federal or out-of-state conviction, for any offense that under the laws of this State would be a sexually violent offense as defined in paragraph (1); or

(3) An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraph (1) or (2).

10. Thus, persons convicted of sexual assault in the fourth degree, HRS § 707–733(1)(a) (Supp. 2001), must also abide by the registration requirements of chapter 846E. HRS § 846E-1.

Once labeled as a sex offender, a person is required under HRS § 846E–2 to register personal information, including name, date of birth, social security number, address, telephone number, and physical description, for the remainder of his or her life.[11] Pursuant to HRS § 846E–4(e), a sex offender must register in person with the county chief of police whenever s/he intends to remain in another jurisdiction for more than ten days, and HRS § 846E–5 requires registrants to verify their information in writing every ninety days. Registrants must also report in person every five years for the purpose of having a new photograph taken. HRS § 846E–4(e).

Convicted sex offenders are required to register with the attorney general; notify the attorney general in writing of any change in name, employment, or residence address within three working days of the change; mail a signed and completed form to the attorney general every ninety days in order to verify registration information; and report in person every five years to the county chief of police of the county where the sex offender's residence is located for purposes of hav-

ing a new photograph taken. HRS §§ 846E–2, –4, –5, –6.

A registrant who recklessly fails to comply with any of these requirements will be guilty of a misdemeanor. Intentional or knowing failure to comply with registration requirements constitutes a Class C felony, which is punishable by up to five years imprisonment. HRS § 846E–9 (Supp.2003);[12] HRS § 706–660 (1993).[13]

## IV.

■■■ The Fourteenth Amendment to the United States Constitution and article I, section 5 of the Hawai'i Constitution provide in relevant part that no person shall be deprived of "life, liberty, or property without due process of law[.]" Under the Hawai'i Constitution, we conduct a two-step inquiry in analyzing procedural due process claims: first, we must ask whether the State has deprived the Guidry of a constitutionally protected "liberty" or "property" interest; second, we "determine what specific procedures are required to satisfy due process." *Bani*, 97 Hawai'i at 293, 36 P.3d at 1263 (citations omitted); *Aguiar v. Hawai'i Housing Auth.*,

---

Sexual assault in the fourth degree is a misdemeanor offense that includes the crime of "knowingly subject[ing] another person to sexual contact by compulsion or causing another person to have sexual contact" HRS § 707–733(1)(a). HRS § 707–700 (2003) defines "compulsion," *inter alia*, as an "absence of consent." HRS § 707–700 (2003) defines "sexual contact" as any touching of the sexual or other intimate parts of a person not married to the actor ... whether directly or through ... clothing or other material ..." Thus, registrants are bound to these requirements for life even in the case of a misdemeanor offense that may have been non-violent and not against a minor.

11. HRS § 846E–2 entitled "Registration requirements," requires in pertinent part that "[a] sex offender shall register with the attorney general and comply with the provisions of this chapter *for life."* (Emphasis added.)

12. HRS § 846E–9 entitled "Penalty," has not been amended since its enactment in 1997. It states that:

(a) For a first offense:
(1) Any person required to register under this chapter who recklessly fails to comply with any of the requirements of this chapter shall be guilty of a misdemeanor; and

(2) Any person required to register under this chapter who intentionally or knowingly fails to comply with any requirements of this chapter shall be guilty of a class C felony.
(b) For any second or subsequent offense, any person required to register under this chapter who recklessly, intentionally, or knowingly fails to comply with any of the requirements of this chapter shall be guilty of a class C felony.

13. HRS § 706–660 states that:
A person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment except as provided for in section 706–660.1 [relating to imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony] and section 706–606.5 [relating to sentencing of repeat offenders]. When ordering such a sentence, the court shall impose the maximum length or imprisonment which shall be as follows:
(1) For a class B felony—10 years; and
(2) For a class C felony—5 years.
The minimum length of imprisonment shall be determined by the Hawai'i paroling authority in accordance with section 706–669 [ (relating to procedures for determining minimum term of imprisonment) ].

55 Haw. 478, 495, 522 P.2d 1255, 1266 (1974). "The due process clause strives to 'ensure that individuals who have property [and liberty rights] are not subject to arbitrary governmental deprivation of those rights.'" *Bani,* 97 Hawai'i at 293, 36 P.3d at 1263 (quoting *Alejado v. City & County of Honolulu,* 89 Hawai'i 221, 226, 971 P.2d 310, 315 (App.1998) (citation omitted)). Liberty is a broad concept that "extends to the full range of conduct which the individual is free to pursue, and ... cannot be restricted except for a proper governmental objective." *Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Second, if we determine that a protected interest is at stake, then this court must determine what "specific procedures are required to satisfy due process." *Bani,* 97 Hawai'i at 293, 36 P.3d at 1263.

## V.

As to the first step, to prevail on his due process claim in this case, Guidry must demonstrate that he possesses a constitutionally protected interest in liberty, and that state action has deprived him of that interest. In *Bani,* this court cited to jurisdictions that have held that registration alone does not involve a protected liberty interest. *See Bani,* 97 Hawai'i at 293, 36 P.3d at 1263. However, as in *Bani,* these courts generally addressed the generic requirement of registration, and not the specific obligations of lifetime registration.[14] *See Cutshall v. Sundquist,* 193 F.3d 466, 483 (6th Cir.1999) (holding that no constitutionally protected interest was implicated by registration, while failing to address the lifetime aspect of registration); *Russell v. Gregoire,* 124 F.3d 1079,

1094 (9th Cir.1997) (analyzing the constitutionality of registration under the right to privacy and finding no liberty interest in privacy at stake); *Artway v. Attorney General,* 81 F.3d 1235, 1268 (3d Cir.1996) (holding that "Artway has no [liberty] interest in the reputational damage, if any, that accompanies registration[,]" but failing to address the effects of perpetual registration (emphasis omitted)); *Patterson v. State,* 985 P.2d 1007, 1017 (Alaska Ct.App.1999) (holding that the absence of a hearing before defendant's personal information was entered into the Department's registry did not deprive defendant of procedural due process); *Snyder v. State,* 912 P.2d 1127, 1132 (Wyo.1996) (holding that because "registration facilitates the location of child sex offenders by law enforcement personnel by providing ready access to location information of known offenders[,] ... [r]egistration is a valid exercise of the police power and does not violate due process"); *Kellar v. Fayetteville Police Dep't,* 339 Ark. 274, 5 S.W.3d 402, 410 (1999) (holding that with regard to the defendant's opportunity to contest his assessment level or the constitutionality of the statute, "due process requirements of the Constitution are satisfied when an adequate post-deprivation procedure exists").

■ These cases found nothing unconstitutional about the initial act of registering with the state, but did not address the liberty interest diminished by lifetime registration. In visiting another aspect of the registration provision, from a temporally different point in the offender's subjection to HRS chapter 846E, we now hold that *lifetime* registration implicates a defendant's protected liberty interest.[15]

---

14. This court said that "the registration component does not interfere with any of Bani's protected liberty interests" *Bani,* 97 Hawai'i at 293, 36 P.3d at 1263. But this followed from the preceding sentence that "there is nothing inherent in the *act* of registering that imposes on any of Bani's protected liberty interests." *Id.* at 292, 36 P.3d at 1262 (emphasis added).

15. In *Bani,* this court held that "Bani has established that the public notification provisions of HRS chapter 846E implicate a liberty interest

protected by the due process clause of the Hawaii Constitution." 97 Hawai'i at 294, 36 P.3d at 1264. This court concluded that Bani demonstrated that the public notification provisions of HRS chapter 846E will likely cause harm to his reputation, and to "tangible interests" in his personal and professional life, employability, associations with neighbors, and choice of housing. *Id.* As these interests are not implicated by mere initial registration alone, we must analyze registration anew.

Similarly, the Massachusetts court in *Doe v. Attorney General*, 430 Mass. 155, 715 N.E.2d 37 (1999), stated:

> *Registration—the requirement that a citizen regularly report to the police for an extended term of years—engages serious liberty interests,* and presents an importantly distinct kind of constitutional danger. It is a continuing, intrusive, and humiliating regulation of the person himself. To require registration of persons not in connection with any particular activity *asserts a relationship between government and the individual that is in principle quite alien to our traditions, a relationship which when generalized has been the hallmark of totalitarian government.*

*Id.* at 43 (emphases added) (citations and internal quotation marks omitted). Additionally, the district court in *Doe v. Pataki*, 3 F.Supp.2d 456 (S.D.N.Y.1998), explained "the registration provisions of the Act [ (New York sex offender registration act) ] place a 'tangible burden' on plaintiffs, potentially for the rest of their lives." *Id.* at 468 (citing *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir.1994)). Here, all convicted sex offenders, including persons convicted of nonviolent, misdemeanor sexual offenses, are subject to HRS chapter 846E and must adhere to its registration requirements with no exceptions. HRS §§ 846E–1, –2. Accordingly, the registration requirements permanently alter the legal status of all convicted sex offenders subject to chapter 846E. *See Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).[16] Specifically, "[t]he imposition on a person of a new set of legal duties that, if disregarded, subject him or her to felony prosecution, constitutes a change of that person's status under state law." *Doe v. Dep't of Pub. Safety*, 271 F.3d 38, 57 (2d Cir.2001) (internal quotation marks and citations omit-

ted), *rev'd on other grounds* by 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

More intrusive than the mere burden of initially registering with the state, the various lifetime registration requirements result in the specific deprivation of a right to be free from excessive government regulation. The registration requirement imposes unending governmental regulation of basic life activities *despite the completion of, and following any criminal sentence.* The Massachusetts court also noted in *Doe*, 715 N.E.2d at 43 n. 14, that "[t]he burden of registration also subjects an offender to possible additional criminal sanctions and incarceration for failing to comply with affirmative duties of annually appearing in person before local police official and maintaining the accuracy of registration information." The effects of lifetime registration are similar to the effects of the lifetime surveillance by government authorities as described by the Supreme Court in *Weems v. United States*, 217 U.S. 349, 366, 30 S.Ct. 544, 54 L.Ed. 793 (1910):

> His prison bars and chains are removed, it is true, ... but he goes from them to a *perpetual limitation of his liberty.* He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, *not being able to change his domicile without giving notice to the "authority immediately in charge of his surveillance;" and without permission* in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him and he is subject to tormenting regulations that, *if not so tangible as iron bars and stone walls, oppress as much by their continuity and deprive of essential liberty.*

(Emphases added.) [17] Similarly, the lifetime requirements associated with registration set

---

16. According to the Supreme Court,

> [i]t is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of ... [liberty]. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment ap-

ply whenever the State seeks to remove or significantly alter that protected status.
*Paul*, 424 U.S. at 710–11, 96 S.Ct. 1155.

17. The Supreme Court described, in the context of an eighth amendment analysis, post imprisonment penalties including, *inter alia*, government surveillance for life. The "[s]ubjection to the surveillance of the authorities" included, *inter alia*, the lifetime requirement of giving notice of one's domicile, and "not being allowed to change

forth in HRS chapter 846E deprive convicted sex offenders of tangible liberty interests. Although the prosecution argues that the liberty interests are "based on speculation or are derived from his conviction rather the operation of [HRS] chapter 846E *per se* [,]" this court has held that, with regard to registration, "implication" of a liberty interest is enough to satisfy the first prong of the two-step test. *See Bani,* 97 Hawai'i at 293–95, 36 P.3d at 1263–65. However, this court also stated that "Bani has substantial injury to both his reputation and other " 'tangible interests.' " " *Bani,* 97 Hawai'i at 294, 36 P.3d at 1264.

Given the expansive reach of the first generation of sex offender registration acts, many other jurisdictions have recognized that liberty interest is encumbered by registration statutes which may be less burdensome than Hawaii's.[18] In *Pataki,* the court examined the New York State Sex Offender Registration Act. *Pataki,* 3 F.Supp.2d at 456. The New York statute mandates re-registration on a yearly basis for ten years, and registration every ninety days for ten years, and potentially for life for a sexually violent predator. *Id.* at 468. Like the Second Circuit in *Doe,* the New York court held that

> [i]n light of these requirements placed on registrants, there can be no genuine dispute that registration alters the legal status of all convicted sex offenders subject to

the Act for a minimum of ten years and, for some, permanently. These requirements obviously encroach on the liberty of convicted sex offenders, and, therefore, they suffer a tangible impairment of a right in addition to mere harm to reputation.

*Id.*[19]

These cases clearly demonstrate that absent a meaningful opportunity for dispensation, the subjection of offenders, who have already served their criminal sentences, to lifetime requirements is beyond the scope of permissible regulation. Thus, we hold that requiring lifetime registration of all sex offenders without qualification, noncompliance with which is punishable by criminal penalties, implicates a liberty interest that cannot be curtailed absent procedural protections.

## VI.

Having determined that HRS § 846E–2 implicates Guidry's liberty interest, it must be decided whether Guidry was afforded the requisite procedural safeguards of due process required by article I, section 5 of the Hawai'i Constitution by balancing certain factors. In the present case, it is undisputed that Guidry received no hearing or process regarding his lifetime registration, as HRS § 846E–2 requires an automatic registration of all "sex offenders"[20] who fall within the enumerated categories.

> Hawaii's absolute lifetime registration statute does not involve stigma, but rather, infringes upon an individual's right to be free from perpetual government intrusion. This goes to the very heart of liberty and does not fall within the ambit of the "stigma plus" analysis.

it without the knowledge and permission" of the authorities. *Weems,* 217 U.S. at 364, 30 S.Ct. 544.

18. The cases cited herein have held that registration and notification taken together are unconstitutional under the "stigma plus" test. The test was first utilized by the United States Supreme Court in *Paul.* Under the test, an individual's interest in liberty is not guaranteed by due process unless some other more tangible interest has been impaired. *Dep't of Public Safety,* 271 F.3d at 53. Cases following this line of reasoning hold that the notification component of sex offender registration results in damage to a registrant's reputation, which alone is not enough to create a liberty interest. The registration component, however, creates certain "plus factors," which, together with the stigma element, implicates a liberty interest.

We decline to follow the "stigma plus" test under the present circumstances. The test concerns cases involving damage to reputation, which alone is not enough to trigger a liberty interest. The type of deprivation that flows from

19. Although it is true that the Ninth Circuit in *Russell* has held that registration does not violate due process, that court was not faced with the issue of whether the lifetime requirement of registration constitutes an impairment of liberty. The court's opinion primarily addressed the constitutionality of registration under the right to privacy; however, in its one paragraph discussion of due process, it held that because the statute did not deprive plaintiffs of their privacy rights, it similarly did not impinge on any of their liberty interests. *See Russell,* 124 F.3d at 1094.

20. This court has held in *State v. Chun,* 102 Hawai'i 383, 390, 76 P.3d 935, 942 (2003), that "indecent exposure, in violation of HRS § 707–

■ The requirements of due process have been well-established by previous cases. In *Bani* it was stated that "[the minimum requirements of due process are notice and the opportunity to be heard.]" *Bani*, 97 Hawai'i at 296, 36 P.3d at 1266 (citing *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 243, 953 P.2d 1315, 1341 (1998); *Price v. Zoning Bd. of Appeals*, 77 Hawai'i 168, 172, 883 P.2d 629, 633 (1994); *Sandy Beach Defense Fund v. City & County of Honolulu*, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989); and *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)).

But before evaluating factors relevant to that question, it is important to note that the Supreme Court recently decided that in order to "assert a right to a hearing under the [federal] Due Process Clause[, a person] must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). Therefore, the Supreme Court held that because "Connecticut ... has decided that the registry requirement shall be based on the fact of previous conviction, not the fact of current dangerousness ... [,] due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." [21] *Id.* at 4, 123 S.Ct. 1160. The Supreme Court's due process analysis highlights a seeming distinc- tion between Connecticut's registration statute and the Hawai'i registration statute.[22]

The Supreme Court held that

even assuming, *arguendo*, that respondent has been deprived of a liberty interest, [the federal] due process [clause] does not entitle him to a hearing to establish a fact that *is not material under the Connecticut statute.* ... [T]he fact that respondent seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's Megan's law.... Indeed, the disclaimer on the website explicitly states that respondent's alleged nondangerous- ness simply does not matter.

*Id.* at 7, 123 S.Ct. 1160. Logically, then, it follows that due process would appear to require the opportunity to determine a fact that *is material* to a state's statutory scheme and we independently hold so under the Hawai'i Constitution.

■ Although the Supreme Court in *Connecticut Dep't of Pub. Safety* did not require a hearing under the sex offender registration and notification statute at issue in order to satisfy due process under the federal consti- tution, this court has provided broader due process protection under the Hawai'i Consti- tution.[23] *See Connecticut Dep't of Pub. Safe- ty*, 538 U.S. at 4, 7, 123 S.Ct. 1160 (finding that the "registry requirement" of the Con- necticut statute was "based on the fact of

734, ... does not constitute an offense that en- tails 'criminal sexual conduct' and, consequently, that persons convicted of indecent exposure are not 'sex offenders' for purposes of HRS ch[apter] 846E."

**21.** Under Connecticut's sex offender statute, "the registration requirement runs for ten years in most cases; those convicted of sexually violent offenses must register for life. Conn. Gen.Stat. §§ 54–251, 54–252, 54–254 (2001)." *Connecti- cut Dep't of Pub. Safety*, 538 U.S. at 5, 123 S.Ct. 1160. As discussed *supra*, under HRS chapter 846E, all convicted sex offenders, including per- sons convicted of nonviolent, misdemeanor sexu- al offenses, are subject to HRS chapter 846E and must adhere to its registration requirements without exception. HRS § 846E–1, E–2. *Con- necticut Dep't of Pub. Safety* did not involve a law requiring *all* sex offenders to register for life; rather, lifetime registration was only imposed on so called violent sex offenders. *Connecticut Dep't of Pub. Safety*, 538 U.S. at 4–5, 123 S.Ct. 1160.

**22.** The Supreme Court found "it unnecessary to reach [the] question" of whether, "under *Paul v. Davis* the respondent has failed to establish that petitioners have deprived him of a liberty inter- est" by the public disclosure of Connecticut's sex offender registry. *Connecticut Dep't of Pub. Safe- ty*, 538 U.S. at 7, 123 S.Ct. 1160.

**23.** The Supreme Court's decision in *Connecticut Dep't of Pub. Safety*, is not determinative in the present case, inasmuch as we confirm Guidry's due process claim under the Hawai'i Constitu- tion. "As the ultimate judicial tribunal with fi- nal, unreviewable authority to interpret and en- force the Hawai'i Constitution, we are free to give broader protection under the Hawai'i Con- stitution than that given by the federal constitu- tion." *State v. Wallace*, 80 Hawai'i 382, 397 n. 14, 910 P.2d 695, 710 (1996) (quoting *State v. Hoey*, 77 Hawai'i 17, 36, 881 P.2d 504, 523 (1994)).

previous conviction, . . . not current dangerousness" and that "due process does not entitle" offenders to a hearing prior to registration or public "disclosure of registrants' information"); *see also Bani*, 97 Hawai'i at 287, 36 P.3d at 1257. In *Bani*, this court held that, under the Hawai'i Constitution, "the absence of procedural safeguards in the public notification provision" rendered such provisions of "HRS chapter 846E unconstitutional, void, and unenforceable." *Bani*, 97 Hawai'i at 287, 36 P.3d at 1257. Thus, unlike the Supreme Court's holding in *Connecticut Dep't of Pub. Safety*, 538 U.S. at 4, 123 S.Ct. 1160, this court established that due process requires a hearing to determine whether the offender, under HRS chapter 846E (Supp. 2000), represents a "threat to society" prior to the release of registration information. *Bani*, 97 Hawai'i at 287, 36 P.3d at 1257.

Under a statutory scheme similar to our own, the Florida third district court of appeals distinguished *Connecticut Dep't of Pub. Safety* in holding that a determination of "dangerousness" was material under the Florida statute. Specifically, the district court held that "[u]nlike the Connecticut statute, which makes no determination that an offender is dangerous, FSPA [ (Florida Sexual Predator Act) ] specifically provides that sexual predators 'present an extreme threat to the public safety.' " *Espindola v. State*, 855 So.2d 1281, 1290 (Fla.App.3d Dist. 2003) (quoting § 775.21(3)(a), Fla. Stat.). Therefore, "the determination of 'dangerousness' is of import to FSPA, and . . . the State's reliance on *Conn. Dep't of Pub. Safety v. Doe* . . . is misplaced." *Id.* The district court of appeals, thus, held that "this total failure to provide for a judicial hearing on the risk of the defendants committing future offenses, makes it violative of procedural due process, and therefore unconstitutional." *Id.*

■ We would not characterize HRS chapter 846E as the Supreme Court characterized the Connecticut statutes. *Connecticut Dep't of Pub. Safety*, 538 U.S. at 4, 123 S.Ct. 1160. In any event, in enacting HRS chapter 846E, the legislature expressly found that "sex offenders who use physical violence, sex offenders who prey upon children, and repeat sex offenders present an *extreme threat to the public safety*." 1997 Haw. Sess. L. Act 316, § 1, at 749 (emphasis added); *see also* HRS 846E–3(c) (Supp.2001) (providing that the relevant information that is disclosed to the public is that which "is *necessary to protect the public* [and] shall be collected for [the purpose] of making it available to the general public" (emphasis added)). Additionally, the legislature found that "it has a compelling interest in *protecting the public* from sex offenders and in protecting children from predatory sexual activity by requiring strict registration requirements of sex offenders. . . ." *Id.* (emphasis added.) Whereas, the restrictions on liberty are obviously aimed at preventing sex offenders from re-offending, the element of whether an offender "presents an extreme threat" or is dangerous is material. *See Bani*, 97 Hawai'i at 297, 36 P.3d at 1267 (finding, in the context of due process analysis, that "the legislature intended to provide for sex offender registration . . . to protect the public from sex offenders who present 'an extreme threat to public safety.' " (emphasis in original) (quoting 1997 Haw. Sess. L. Act 316, at 749)). This is also confirmed by the notification component of the statute, HRS § 846E–3(c), which provides that "[r]elevant information that is *necessary to protect the public* shall be collected for purposes of making it available to the general public[.]" (Emphasis added). Inasmuch as this language requires that the information collected be necessary to protect the public, the information can only be relevant because of the assumption that an offender continues to pose a threat to society. Thus, similar to the Florida statute, it is material to our statutory scheme that future dangerousness is the threat sought to be monitored by registration requirements. Hence, we conclude that the absence of a "judicial hearing on [such] a risk" violates procedural due process. *Espindola*, 855 So.2d at 1290.

## VII.

In *Bani*, this court balanced certain factors in determining that the defendant was enti-

tled to procedural due process: [24]

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Bani,* 97 Hawai'i at 297, 36 P.3d at 1267. (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Applying those factors in this case reveals that Guidry was denied the minimum requirements of due process under the Hawai'i Constitution.

### A.

With regard to Guidry's interest, a person has a strong interest in his or her freedom from unreasonable government restraints and intrusions. Under the registration requirements of chapter 846E, Guidry can no longer change his location for any two-week period without informing local authorities of his plans. HRS § 846E–4(e). For the remainder of his life, he must correspond with authorities every ninety days to verify his address and employment and have a new picture taken every five years. HRS §§ 846E–5, –4(e). These mandates apply without any opportunity to demonstrate that such governmental intrusions are not warranted. If Guidry fails to stay abreast of these strict lifetime obligations, he will be subject to misdemeanor or felony charges as was the case here. HRS § 846E–9.

As discussed above, it is fundamental that liberty is protected by the minimum requirements of due process—notice and an opportunity to be heard. *See Dep't of Pub. Safety,* 271 F.3d at 57 (noting that registration requirements imposed by Connecticut's law, which is less burdensome than Hawaii's law,

are "extensive and onerous"); *Doe,* 715 N.E.2d at 43 (noting that registration is "a continuing, intrusive, and humiliating regulation of the person himself"). Given the nature of the liberty deprivations involved, Guidry's interest in a hearing is compelling.

### B.

Regarding the risk of erroneous deprivation, as discussed above, the current procedures under the registration provision of HRS chapter 846E applicable here are extremely broad and contain absolutely no safeguards to prevent erroneous deprivations of a registrant's liberty interests. Without any opportunity to petition for release from the registration requirement, an offender who does not present a threat to society may nonetheless be subject to lifetime registration. Similarly, the Massachusetts court has held that the automatic registration of every person convicted under Massachusetts' sex offender registration statute was not justified because the "general legislative category does not adequately specify offenders by risk" and the court could "envision situations ... where the risk of reoffense by one convicted under G.L. [ (general laws) ] c[hapter] 265 § 23 [ (pertaining to rape and abuse of a child) ], may be minimal and the present danger of that person to children not significant." *Doe,* 715 N.E.2d at 44. As the statute is currently written, there are no procedural safeguards as to "sex offenders" who present no danger to the community and are not habitual offenders. Thus, the high risk of erroneous deprivation of rights weighs in favor of procedural protections.

### C.

On the other hand, the State has an interest in protecting its citizens against sex offenders who have shown a high rate of recidivism. As noted in *Bani,*

> the legislature stated that its goal in enacting HRS chapter 846E was to "protect ... the public from sex offenders and ... [to]

---

24. These factors were apparently adapted from *Mathews v. Eldridge,* 424 U.S. 319, 321, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), a case in which procedures already in place were evaluated to determine whether they were sufficient for pro-

cedural due process purposes. We independently adopt these factors under the due process clause of the Hawai'i Constitution, article I, Section 5.

protect . . . children from predatory sexual activity." 1997 Haw. Sess. L. Act 316, § 1 at 749. The legislature explicitly found that "sex offenders who *use physical violence, sex offenders who prey upon children, and repeat sex offenders present an extreme threat to the public safety.*" Concerns were expressed about the victims of sex offenders, who often suffer devastating and long-term consequences. "[The cost to individuals," the legislature noted, "and to society at large, while incalculable, is exorbitant.]"

*Bani,* 97 Hawai'i at 297, 36 P.3d at 1267 (citations omitted) (some emphasis in original and some emphasis added). This language indicates that the legislature intended that HRS chapter 846E protect the public from sex offenders who present an "extreme threat to public safety." Thus, the State has an interest in amassing registration information from sex offenders who represent a danger to the community as well as an interest in ensuring that the registration information it collects is "relevant," accurate, and "necessary to protect the public." HRS § 846E–3(c); *see Bani,* 97 Hawai'i at 298, 36 P.3d at 1268 (finding that the state has an interest in assuring that the information disclosed to the public is accurate); *Pataki,* 3 F.Supp.2d at 470 (stating that a state has "an interest in ensuring that its classification and notification system is both fair and accurate . . . [and has no interest] in making erroneous classifications and overbroad notifications"). However, the State's compelling interest in requiring lifetime registration in the particular cases of persons who pose a less egregious risk would appear less weighty.

### D.

When balancing the interests set out above, "[r]egistration is a stringent regulatory regime, permissible only 'where the danger is great and the measures are carefully calibrated to the needs of the particular case.'" *Doe,* 715 N.E.2d at 45–46 (quoting *Doe v. Attorney General,* 426 Mass. 136, 686 N.E.2d 1007 (1997)). Consequently, in weighing the fact that these restrictions are aimed at preventing future offenses, the important interest involved, the lack of statutory safeguards, and the risk of erroneous

deprivation of protected rights, a judicial hearing should be required.

### VIII.

■ In *Bani,* this court recognized that the initial act of registration was not subject to liberty interests. But in this case, we have determined that automatic *lifetime* requirements are subject to due process protection. "However, we have repeatedly recognized that '[d]ue process is not a fixed concept requiring a specific procedural course in every situation.' Instead, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Bani,* 97 Hawai'i at 296, 36 P.3d at 1266 (quoting *Korean Buddhist Temple,* 87 Hawai'i at 243, 953 P.2d at 1341 (citations omitted)). Guidry notes that even though some offenders may not be entitled to a hearing prior to registration, due process requires that they be given an opportunity thereafter to challenge their classification. Because due process does not require that a hearing be held at any specific time, due process is satisfied so long as an offender is afforded a hearing at some time. *Cf. Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 422 (1995) (providing that "[e]ven if principles of due process did not require that defendants classified as Tier Two or Three be granted a prenotification hearing, such process would be required by considerations of fundamental fairness"). The record does not indicate Guidry sought such a hearing.

■ Although the court indicated Guidry should have proceeded by way of injunctive relief, we believe the proper avenue for obtaining such a hearing is to permit sex offenders to file a petition to institute a special proceeding before the court. At such a hearing, the State shall have the burden of proving, by a preponderance of the evidence, that the sex offender is required to continue to register under HRS chapter 846–E, and the sex offender shall be given the opportunity to rebut evidence presented by the State to demonstrate that the offender does not continue to represent a threat to the community. Such a procedure would be similar to the procedural framework set forth in HRS

§ 846E–3(d) (Supp.2002) (providing a sex offender with the opportunity to show that he or she does not represent a threat to the community such that the collection and release of registration information is not necessary to protect the public).[25] We believe then that the remedy for convicted offenders lies in such civil proceedings.

Accordingly, under the Hawai'i Constitution, article I, section 5, due process requires that a convicted sex offender under HRS § 846E–1 be afforded the right to a judicial hearing at which evidence may be offered to demonstrate that continuance of all or part of the lifetime registration requirements are not necessary in a particular case to fulfill the public need to which the sex offender act responded. We recognize the compelling policies behind sex offender registration provisions and the legislature's laudable effort to prevent the reoccurrence suffered by victims of violent sex crimes. Yet, these policies must be addressed within constitutional bounds. *Cf. Poritz,* 662 A.2d at 422 (holding that although sex offender registration statute was constitutional, fundamental fairness requires procedural protections).

## IX.

■■■ Guidry also challenges his conviction on the ground that registration violates the constitutional prohibition against ex post facto laws. Article I, section 10 of the United States Constitution states that "[n]o State shall … pass any … ex post facto Law[.]" The federal ex post facto clause prohibits legislatures from "retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). The "intent-effects" test is applied to determine whether a statute runs afoul of the federal ex post facto clause. *Russell v. Gregoire,* 124 F.3d 1079, 1084 (9th Cir.1997). That test questions whether (1) the legislature intended the statute to be criminal or civil, and (2) the statute is " 'so punitive' in effect that it overcomes the nonpunitive legislative intent." *Id.* at 1088. "The first part of the test ('intent') looks solely to the declared purpose of the

legislature as well as the structure and design of the statute." *Id.* at 1087. "The second part of the test ('effects') requires the party challenging the statute to provide 'the clearest proof' that the statutory scheme is so punitive either in purpose or effect as to negate the State's nonpunitive intent." *Id.*

■■■ First, as to legislative intent, Guidry concedes that the legislature expressly stated that the purpose of the statute is to "protect[ ] the public from sex offenders … and protect[ ] children from predatory sexual activity." 1997 Haw. Sess. L., Act 316, at 749. However, Guidry argues that the *"true* intent of the legislature was to impose greater punishments" because HRS chapter 846E is in the penal code. (Emphasis in original.) HRS chapter 846E is not, in fact, within the Hawai'i Penal Code but rather, in "Title 38. Procedural and Supplementary Provision." This placement of HRS chapter 846E within the criminal procedure section of the HRS cannot defeat the express purpose of the legislature that HRS chapter 846E be remedial rather than punitive. *See Smith,* 538 U.S. at 95, 123 S.Ct. 1140 (holding that the location of Alaska sex offender registration provisions within the criminal procedure code was "not sufficient to support a conclusion that the legislative intent was punitive"); *see also Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (upholding a post-criminal sentence procedure for civilly committing sexually violent persons because its purpose was remedial and thus did not violate the ex post facto clause).

■■■ Next, it must be determined whether, despite the stated non-punitive intent of the legislature, the statute's effects negate the state's nonpunitive intent. In *Russell,* the Ninth Circuit evaluated the punitive effect of a statute under the factors set out in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) namely,

[ (1) ] [w]hether the sanction involves an affirmative disability or restraint, [ (2) ] whether it has historically been regarded as a punishment, [ (3) ] whether it comes into play only on a finding of *scienter,*

25. Of course the legislature may adopt and prescribe specific procedures for such a hearing.

[ (4) ] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [ (5) ] whether the behavior to which it applies is already a crime, [ (6) ] whether alternative purposes to which it may rationally be connected is assignable for it,[26] and [ (7) ] whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.[27]

*Russell,* 124 F.3d at 1084 (quoting *Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. 554). It is important to note that not all factors must be satisfied in determining whether a statute has punitive effects. *See id.* at 1086 (explaining that even though "the statute imposes an affirmative restraint and imposes a sanction traditionally regarded as punishment [this] does not override its nonpunitive nature"); *see also Smith,* 538 U.S. at 97, 123 S.Ct. 1140 (stating that *Mendoza–Martinez* factors are "neither exhaustive nor dispositive" and are "useful guideposts"). It is required that the "party challenging the statute ... provide 'the clearest proof' that the statutory scheme is so punitive either in purpose or effect as to negate the State's non punitive intent." *Russell,* 124 F.3d at 1087 (quoting *Hendricks,* 521 U.S. at 361, 117 S.Ct. 2072).

With respect to the first factor, we note that in the case of a notification provision, the New Jersey Supreme Court has held that "even remedial sanctions carry the 'sting of punishment[.]' " *Poritz,* 662 A.2d at 397. Second, registration requirements to protect the public have not "historically been regarded as a punishment[,]" but as "valid regulatory technique with a remedial purpose." *State v. Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570, 582 (1998). Third, insofar as the registration requirements are concerned, scienter is not required. Fourth, the requirement of registration may promote the aims of deterrence inasmuch as an offender may be less likely to re-offend if s/he believes her/his whereabouts are being monitored. Fifth, the failure to register was not "already a crime."

Sixth, although it may be contended that the statute has an alternative purpose besides the remedial purpose stated by the legislature, Guidry apparently concedes that "this factor weighs in favor of construing the statute as remedial rather than punitive." Seventh, based on Guidry's concession, the effects of the statute are not excessive as to the alternative purpose. Six of the seven factors appear to weigh against an ex post facto violation. Therefore, it cannot be said that Guidry has provided the "clearest proof" that the statutory scheme is so punitive it has negated the State's remedial purpose. Consequently, HRS chapter 846E meets the second prong of the "intent-effects" test and is thus not violative of the federal ex post facto clause.

Although the Hawai'i Constitution does not contain an ex post facto clause, HRS § 1–3 (1993) provides similar protection. The statute provides that "[n]o law has retrospective operation unless otherwise expressed or obviously intended." Guidry does not discuss how HRS chapter 846E would violate the ex post facto law in Hawai'i. Thus, this issue need not be discussed. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (2003) ("Points not argued may be deemed waived.").

## X.

█ Also, Guidry contends that HRS chapter 846E violates the cruel and unusual punishment clauses of the United States Constitution and the Hawai'i Constitution. He asserts that "the court impliedly denied [the cruel and unusual punishment] challenge based on the conclusion ... that [the] provision [ (requirements of registration) ] of [c]hapter 846E did not amount to 'punishment.' "

█ The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Supreme Court has held that because the

---

**26.** In *Mendoza–Martinez,* the Supreme Court examined the legislative intent for any other purpose than the one purported. 372 U.S. at 183, 83 S.Ct. 554.

**27.** The Supreme Court reasoned in *Smith* that the question was "whether the regulatory means chosen are reasonable in light of the nonpunitive objective." 538 U.S. at 87, 123 S.Ct. 1140.

Eighth Amendment did not contain a proportionality guarantee, "what was 'cruel and unusual' under the Eighth Amendment was to be determined without reference to the particular offense. . . ." *Harmelin v. Michigan,* 501 U.S. 957, 978, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Guidry argues that "HRS chapter 846E, as applied to [ ] Guidry, is grossly disproportionate to the offenses for which he was convicted." He further states that he "was convicted of an offense which was committed in the absence of consent, without the requirement of proof of violence. He received a term of probation which the evidence showed he successfully completed. However, HRS chapter 846E brands [him] a 'sex offender' for the rest of his life." Because the Supreme Court has held that proportionality is not guaranteed by the Eighth Amendment, Guidry's argument fails. Under the federal constitution, the question is not whether the requirements under HRS chapter 846E as applied to Guidry are disproportionate to the offense for which he was convicted, but rather, whether the statute itself effects a "punishment [which] was both (1) severe *and* (2) unknown to Anglo–American tradition." *Id.* at 991, 111 S.Ct. 2680 (emphasis in original). As Guidry does not assert any argument as to these factors, we do not decide this issue. *See* HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

■ The "cruel and unusual" punishment provision in the Hawai'i Constitution incorporates a proportionality test. When interpreting article I, section 12 of the Hawai'i Constitution this court has held that

[t]he standard by which punishment is to be judged under the "cruel and unusual" punishment provision[ ] of the . . . Hawaii Constitution[ ] is whether[,] in the light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the

conscience of reasonable persons or to outrage the moral sense of the community." *State v. Davia,* 87 Hawai'i 249, 953 P.2d 1347 (1998) (brackets in original) (quoting *State v. Kumukau,* 71 Haw. 218, 226–27, 787 P.2d 682, 687 (1990)). First, Guidry does not assert any argument that HRS chapter 846E amounts to "punishment" beyond that already set forth in his ex post facto challenge. As discussed earlier, the registration requirements are not so punitive in nature as to overcome the legislature's remedial purpose under such circumstances. In any event, there is ample authority holding that registration is not punitive in nature. *See Illinois v. Adams,* 144 Ill.2d 381, 163 Ill.Dec. 483, 581 N.E.2d 637, 640 (1991) (holding that registration under the Illinois sex offender registration and notification law is not cruel and unusual punishment); *see also State v. Dobies,* 147 Ohio App.3d 568, 771 N.E.2d 867, 871 (2001) (clarifying that sex offender registration requirements are not punitive in nature, therefore, "the protections against cruel and unusual punishment are not triggered"); *Poritz,* 662 A.2d at 405 (holding registration is not punishment and therefore cannot constitute cruel and unusual punishment). As such, Guidry is unable to overcome the threshold issue. Guidry, therefore, has failed to demonstrate that the registration requirements under HRS chapter 846E constitute cruel and unusual punishment under the Hawai'i Constitution.

## XI.

Additionally, Guidry contends that HRS chapter 846E violates his right to privacy under the United States and Hawai'i Constitutions.[28] According to Guidry, this right to privacy pertains to the "vast amount of personal information that is compiled and publicly released" under HRS chapter 846E. Although Guidry mentions that his right to privacy is violated by the "compilation and public release" of registration information, his arguments primarily focus on the disclo-

---

**28.** Guidry cites to *Whalen v. Roe,* where the United States Supreme Court held that "the federal right to privacy, based on the due process clause of the Fourteenth Amendment, protects . . . the individual interest in avoiding disclosure of personal matters[.]" 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Also, Guidry notes that the Hawai'i Constitution contains an express right to privacy in article I, section 6, which provides that "the right to privacy is recognized and shall not be infringed without the showing of a compelling state interest."

sure of his registration. Guidry provides no discernable argument as to whether the compilation alone infringes on his privacy rights and, thus, such arguments are deemed waived. HRAP Rule 28(b)(7) ("Points not argued may be deemed waived."). Accordingly, we only address his arguments as to whether the publication of his personal information violates his right to privacy.

Guidry notes that, unlike other sex offender registration and notification statutes, HRS chapter 846E does not categorize offenders, for the purposes of notification, "based on risk level" and "does not require any evidence of future dangerousness."[29] Guidry refers to New Jersey's sex offender statute, as discussed in *Poritz*, where the New Jersey court, *inter alia*, mentioned that "the degree and scope of disclosure" of registration information "is carefully calibrated to the need for public disclosure" based on the risk of reoffense. "The greater the risk of reoffense, the greater is the scope of disclosure." 662 A.2d at 412. However, Guidry acknowledges that the *Poritz* court ultimately concluded that the right to privacy had not been violated. *Id.* at 412–13.

This court has not expressly addressed whether, under HRS chapter 846E, the release of a sex offender's registration information violates his or her right to privacy.[30] *Bani*, 97 Hawai'i at 291 n. 4, 298, 36 P.3d at 1261 n. 4, 1268. In *Bani*, however, it was held that a sex offender is "entitled to notice and an opportunity to be heard prior to public notification of his status as a sex offender." The purpose of such procedural due process requirements is to provide a sex

offender with "a meaningful opportunity to argue that he or she does not represent a threat to the community and that public notification is not necessary, or that he or she represents only a limited threat such that limited public notification is warranted." *Id.* at 298, 36 P.3d at 1268. In the absence of a hearing, this court held that "the public notification provisions of HRS chapter 846E are void and unenforceable." *Id.*

In the present case, Guidry has not been afforded a hearing to determine whether public notification of his status as a sex offender is warranted. Under the provisions in effect at the time of his violations, HRS chapter 846E (Supp.1998) did not provide for a *Bani* hearing. Accordingly, as to Guidry, the public notification provisions are void and unenforceable. *See id.* Because the provisions are void as to Guidry, we need not determine whether, if such provisions did apply, they violated Guidry's right to privacy.

## XII.

Next, Guidry argues that HRS chapter 846E, in classifying persons required to register as sex offenders, violates the equal protection clauses of both the United States and the Hawai'i constitutions.[31] Such a classification, according to Guidry, implicates a fundamental privacy right in information that is personal and intimate.[32]

Under both the United States and the Hawai'i constitutions, classifications with re-

---

**29.** Additionally, Guidry contends that the Hawai'i Constitution recognizes a right to privacy in highly personal and intimate matters, such as "sexual relations." As noted by the prosecution "[s]exual assaults are not private matters, but rather criminal offenses which are readily available through public records...." We do not agree that Guidry's information regarding his sexual assault in the second degree offense should be protected under the right to privacy regarding one's "sexual relations."

**30.** In *Bani*, this court acknowledged that "the legislature attempt[ed] to exempt HRS chapter 846E from the constitutional right to privacy." *Bani*, 97 Hawai'i at 291 n. 4, 36 P.3d at 1261 n. 4. However, this court observed "at the appropriate time" it would "ascertain whether, for pur-

poses of HRS chapter 846E a sex offender has a 'diminished' expectation of privacy in statutorily enumerated 'relevant information.' " *Id.*

**31.** The Fourteenth Amendment to the United States Constitution provides in pertinent part that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." Article I, section 5 of the Hawai'i Constitution provides in relevant part that "no person shall be ... denied the equal protection of the laws."

**32.** Guidry notes that the court did not expressly address his equal protection arguments in the 1999 Order, and maintains that the court erred in failing to dismiss his charges based on such equal protection grounds.

spect to a suspect category [33] or that infringe on fundamental rights are subject to strict scrutiny. *See Baehr v. Lewin*, 74 Haw. 530, 571–72, 852 P.2d 44, 63–64, *reconsideration granted in part*, 74 Haw. 650, 875 P.2d 225 (1993); *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (explaining that "state laws are subject to strict scrutiny when they impinge on personal rights protected by the Constitution"). Under "strict scrutiny" analysis, laws are presumed to be unconstitutional unless the state shows a compelling interest to justify such classifications, and the statute must be tailored to avoid unnecessary abridgements of constitutional rights. *See Baehr*, 74 Haw. at 571–72, 852 P.2d at 63–64; *see also Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249 (explaining that laws subjected to strict scrutiny "will be sustained only if they are suitably tailored to serve a compelling state interest").

In the alternative, Guidry argues that even if HRS chapter 846E is not seen as implicating a fundamental right, the statute fails the 'rational basis' test in that the classification of persons who present no future danger to the public as "sex offenders" is not rationally related to the purpose of protecting the public.

As previously discussed, with respect to the disclosure of Guidry's registration information, "the public notification provisions of HRS chapter 846E are void and unenforceable" as applied to Guidry. *Bani*, 97 Hawai'i at 298, 36 P.3d at 1268. Because the notification provisions do not affect Guidry, we need not address his equal protection arguments regarding such disclosure.

In regard to the compilation of registration information, it can be implied from the holding in *Bani* that the *initial* act of registration requirement does not implicate any fundamental rights to privacy. *Cf. Bani*, 97 Hawai'i at 292–93, 36 P.3d at 1263 (2001) (holding that "there is nothing inherent in

the act of registering that imposes on any of Bani's protected liberty interests"). Assuming, *arguendo*, that the lifetime registration requirement implicates a fundamental right to privacy, the strict scrutiny analysis would apply. In this regard, Guidry specifically contends that HRS chapter 846E is not narrowly tailored to serve a compelling state interest because: (1) it is "grossly over inclusive" in that it "includes persons, like [Guidry] who present no danger to the public[,]" and "applies to persons convicted of crimes that are not necessarily related to sexual conduct, such as kidnaping and unlawful imprisonment[;]" and (2) it is underinclusive, for "[o]ffenders who present an equal or greater danger to the public" such as those who commit murder, assault, or robbery, are not covered by the statute.

■■■ In regard to Guidry's first point, this court has said that one who "alleges that a statute is unconstitutionally overbroad, other than a statute affecting the freedom of expression, must be directly affected by the claimed overbroad aspects." [34] *State v. Tripp*, 71 Haw. 479, 483, 795 P.2d 280, 282 (1990); *see also State v. Kane*, 87 Hawai'i 71, 77, 951 P.2d 934, 940 (1998); *State v. Gaylord*, 78 Hawai'i 127, 143, 890 P.2d 1167, 1182 (1995); *State v. Kaneakua*, 61 Haw. 136, 144, 597 P.2d 590, 594 (1979); *State v. Sturch*, 82 Hawai'i 269, 275, 921 P.2d 1170, 1176 (App. 1996) ("A person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally to others.").

Guidry would not fall within these hypothetical applications of the statute as raised above. Guidry's underlying crime did not involve kidnaping or unlawful imprisonment. [35] As to the offense which subjected Guidry to register as a sex offender, he was convicted of sexual assault in the second degree, which is expressly classified under HRS chapter 846E as a "sexually violent

---

**33.** Guidry does not contend that his classification as a sex offender constitutes a suspect classification.

**34.** Guidry did not claim the statute infringed on his constitutional right to freedom of expression.

**35.** As correctly noted by the prosecution, "offenders of either kidnapping or unlawful imprisonment [would] be subject to [HRS chapter 846E] *if the victim is a minor.*" *See* HRS § 846E–1.

offense." [36] HRS § 846E–1. Because Guidry is a person as to whom HRS chapter 846E directly applies, he does not have standing to assert an overbreadth challenge based on hypothetical applications of the statute. *See Sturch*, 82 Hawai'i at 275, 921 P.2d at 1176. Consequently, we hold that Guidry does not have standing to challenge HRS chapter 846E as unconstitutionally overbroad.

▇▇▇ As to Guidry's second point, that the statute is under inclusive, this court has reasoned that

> "[a] statute *does not violate the equal protection clause merely because it could have included other persons, objects, or conduct within its reach.* ... The legislature is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.... *[I]f the law presumably hits evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.* Thus it was for the legislature to determine the relative seriousness of the various crimes and to provide for more severe punishment deemed to pose the greatest and most pervasive danger to the well being of society.

*State v. Freitas*, 61 Haw. 262, 273–74, 602 P.2d 914, 923 (1979) (emphases added). The legislature provided the following justifications, *inter alia*, for the sex offender registration requirements:

> "[S]ex offenders ... present an extreme threat to the public safety" and "commit far more offenses that they are prosecuted for and victimize far more individuals than ever report the crimes.... In particular, victims of sex offenders suffer devastating and long term consequences....

1997 Haw. Sess. L., Act 316, at 749; *Bani*, 97 Hawai'i at 292, 36 P.3d at 1262. In light of such justifications, the legislature may focus "where the need is deemed to be clearest." *Freitas*, 61 Haw. at 273, 602 P.2d at 923. Hence, there would be no violation of the equal protection clause simply because the legislature focused on sex offenders.

Assuming *arguendo*, the "rational basis test" would apply, we inquire as to whether HRS 846E "rationally furthers a legitimate state interest." *Baehr*, 74 Haw. at 572, 852 P.2d at 64 (citations omitted). Hawai'i has a legitimate interest in reducing sex crimes, the great costs resulting from such crimes, and the tendency for sex offenders to reoffend. *See supra.* We observe that other jurisdictions have upheld sex offender statutes against equal protection objections. *See Snyder*, 912 P.2d at 1131 (holding that registration does not violate equal protection because defendant fails to identify how the classification of "sex offender ... does not operate alike upon all similarly situated people"); *cf. Artway*, 81 F.3d at 1268 (concluding that registration of "compulsive and repetitive" sex offenders is rationally related to the goal of protecting vulnerable individuals from sexual offenses).

Guidry argues that the "statute fails the 'rational basis' test" for reasons "similar" to those mentioned in his arguments with respect to strict scrutiny. Insofar as Guidry claims that the statute is not rationally related to protecting the public because it classifies "persons who present no future danger to the public as sex offenders[,]" Guidry in effect reiterates his argument that the statute is overbroad. In the record herein, Guidry has not established that he fits within the category of one who is not dangerous.[37] In

---

36. HRS 846E–1, classifies as "sexually violent offense[s]", *inter alia*, acts defined under HRS § 707–731(1)(a) and HRS § 707–731(1)(b). HRS § 707–731, entitled "Sexual Assault in the Second Degree" provides in relevant part that:
   (1) A person commits the offense of sexual assault in the second degree if:
     (a) The person knowingly subjects another person to an act of sexual penetration by compulsion;
     (b) The person knowingly subjects to sexual penetration another person who is men-

tally defective, mentally incapacitated, or physically helpless;
      ....

37. As noted Guidry was previously convicted of sexual assault in the second degree, under HRS § 707–731(1), a class B felony. *See supra.* In the present case, he was charged with three counts of sexual assault in the fourth degree. The prosecution notes that "inasmuch as [Guidry] presently is facing three counts of [s]exual [a]ssault in the [f]ourth [d]egree under [HRS § ]

any event, any infirmity with respect to the rational basis requirement is obviated by our holding that due process requires that a hearing must be provided, at some point, to determine whether lifetime registration is warranted. This would address the rational application of the statute. Such a hearing would ensure against any irrational effects of the registration requirements under HRS chapter 846E, while enabling the state to serve its interest of protecting the public from sex offenders. In light of the opportunity for such a hearing, HRS chapter 846E becomes much like New Jersey's sex offender registration and notification laws, as mentioned by Guidry, which are "calibrated" to the risk level of the offenders. *See generally Poritz*, 662 A.2d at 412–413.

### XIII.

On the foregoing grounds, we affirm the court's August 5, 1999 judgment as to Count I.

707–733(1)(b), one can hardly presume he 'pres-

ent[s] no danger to the public.' "