147 P.3d 67

**Lucie M. BENCOMO, Plaintiff–Appellee,**

v.

**Derek A. BENCOMO, Defendant–Appellant.**

No. 27032.

Intermediate Court of Appeals of Hawai'i.

Nov. 2, 2006.

Peter Van Name Esser, on the briefs, Honolulu, for Defendant–Appellant.

Elizabeth C. Melehan, on the briefs, Wailuku, for Plaintiff–Appellee.

BURNS, C.J., LIM AND FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Derek A. Bencomo (Derek) appeals from the December 2, 2004 Judgment Granting Divorce and Awarding Child Custody (December 2, 2004 Judgment).[1]

## BACKGROUND

Derek and Plaintiff–Appellee Lucie M. Bencomo, now known as Lucie M. Legault (Lucie), were married on June 20, 1990. Their daughter (Child) was born on February 24, 1994.

On April 4, 2003, Lucie filed a complaint for divorce. On July 16, 2003, following a hearing on July 10, 2003, Judge Eric G. Romanchak entered an "Order on Plaintiff's Motion and Affidavit for Pre–Decree Relief Filed April 10, 2003 and Defendant's Motion and Affidavit for Pre–Decree Relief Filed May 8, 2003" which scheduled a continuation hearing on July 15, 2003. On August 8, 2003, after the July 15, 2003 hearing, Judge Romanchak entered an order awarding Lucie sole legal custody of Child; awarding the parties "shared physical custody" of Child;[2] ordering the payment, commencing July 15, 2003, of child support calculated pursuant to

---

1. Judge Simone C. Polak presided.

2. The child was ordered to be with one party from Saturday at 5:00 p.m. through Wednesday at 9:00 a.m., and with the other party from Wednesday at 9:00 a.m. until Saturday at 5:00 p.m.

the Child Support Guidelines; authorizing Derek sole occupancy of the marital residence; and enjoining and restraining both parties "from removing [Child] from the Island of Maui without the express written permission from the other party or further order of the Court."

On August 20, 2003, in response to Lucie's August 19 and 20, 2003 motions for the award to her of the sole legal and physical custody of Child, and for the appointment of a guardian ad litem for Child, Judge Romanchak entered an order making some minor modifications to the physical custody order, indicating an intent to appoint Jacque Ford (GAL Ford) as the guardian ad litem for Child, and ordering that GAL Ford's "primary focus shall be to facilitate the exchanges, get to know the parties and [Child] as necessary and to determine if the existing orders should be modified and, if so, why." A September 3, 2003 stipulated order appointed GAL Ford.

On November 13, 2003, after hearings on September 24 and October 3, 2003, Judge Romanchak entered the "Order On Plaintiff's Motion and Affidavit for Post–Decree Relief Filed 8/19/03 and Defendant's Motion and Affidavit for Pre–Decree Relief Filed 9/17/03". In part, this order stated:

4. [Derek] shall have visitation with [Child] on October 4, October 8, October 9 and October 11, 2003. Ms. [Julie] Kean shall take [Child] to soccer on October 8, 2003. Ms. Kean shall pick [Child] up from soccer and then go to [Derek's] residence for dinner leaving for [Lucie's] residence by 7:00 p.m. The visitation on October 11, 2003 shall be supervised by Ms. Kean as agreed by the parties.

5. [Child] shall call [Derek] once during the evenings at a reasonable hour and converse for a reasonable period of time. [Lucie] or [GAL Ford] shall remind [Child] to call [Derek].

6. The Guardian Ad Litem is authorized to alter the visitation schedule as appropriate.

7. Ms. Kean shall be appointed Co–Guardian with [GAL Ford].

On November 20, 2003, Judge Romanchak entered an order appointing Julie Kean (GAL Kean) as Guardian Ad Litem and specifying her duties, none of which included the authority to modify the visitation schedule. Judge Romanchak entered the December 3, 2003 "Further Order On Motions For Pre/Post–Decree Relief" which amplified the prior orders.

GAL Kean filed reports on July 2, 2004 and September 9, 2004.

A trial on September 16, 17, 20, and 23, 2004, resulted in the December 2, 2004 Judgment which states in part:

### A. *Custody/Visitation:*

[Lucie] is awarded sole legal and sole physical custody of [Child]. After due consideration, the court adopts the recommendations of the Guardian Ad Litem (hereinafter referred to as "GAL") which shall be implemented as follows:

(1) [Derek] shall have only supervised visitation with [Child] for a six-month period from the date of filing of this decree. A review hearing is set for *June 8, 2005 at 10:00 am* and a report from the GAL shall be filed one (1) week prior to the review hearing.

(2) [Derek] shall begin therapy with a licensed therapist. The GAL shall provide [Derek] with a list of appropriate therapists to choose from.

(3) Neither party shall discuss the divorce proceedings, court dates or reports with [Child]. Neither party shall make derogatory remarks to [Child] about the other parent or others involved in providing services to the family.

(4) [Child] shall be reevaluated for ADHD [attention deficit hyperactive disorder] and shall begin taking medication as recommended by child psychiatrist, Dr. Jason Andrus. The recommendations of either the child's pediatrician or child psychiatrist shall be followed.

(5) [Child] shall continue an aggressive therapy plan with Dr. Susan Rubenstein. The therapy shall be monitored so that there is no interference from either parent. The parents shall each sign a release for

the therapist to receive a copy of their psychological evaluations and a release for all school records.

[Child's] attending doctor shall be able to speak with [Child's] teacher and other school officials. The parties shall cooperate and follow all of the doctor's recommendations.

(6) [Child] shall be encouraged to play soccer, but shall not play on the team coached by [Derek]. [Child] shall play on teams in her own age division. [Child] shall not coach a younger division unless recommended to do so by the GAL.

(7) Both parents shall read the book, "Screen Smarts, A Family's Guide to Media Literacy" by Gloria DeGaetano and Kathleen Bander. In doing so, both parents should become aware of the harmful effects of media and screens including video games, adult television shows and computers.

(8) The parties shall be encouraged to communicate by fax in order to provide a written record of all communications.

(9) [Lucie] shall complete the parenting series through Maui Hui Malama. [Derek] shall enroll in the Maui Hui Malama program for the parents of children with ADHD after Lucie has completed the course. The parents shall not be in the parenting series at the same time.

(10) [Lucie] shall continue to see her therapist, Mary Shortz.

(11) The GAL's services shall be continued for a period of at least six (6) months. . . .

(12) [Derek's] telephone access with [Child] shall be as determined by the GAL.

. . . .

4. **OTHER MATTERS COVERED BY THIS JUDGMENT ARE AS FOLLOWS:**

A. *Child Support:*

Child support shall be calculated pursuant to the Child Support Guidelines. There shall be a separate hearing upon the motion of either party regarding the income of the parties in the calculation of the child support. Until hearing on the mo-

tion, [Derek] shall continue to pay to [Lucie], . . ., the sum of $90.00 per month.

Derek filed a notice of appeal on December 29, 2004. The court entered the Findings of Fact (FsOF) and Conclusions of Law on May 10, 2005. The FsOF state in part as follows:

17. . . . [GAL Kean] was appointed as a co[-]Guardian Ad Litem with [GAL Ford] and the Guardian Ad Litems were authorized to alter the visitation schedule as appropriate. . . .

. . . .

25. Credible evidence was presented that [Derek's] animosity towards [Lucie] is affecting the [Child].

. . . .

39. Testimony supported the belief that [Child] needed consistency in her educational approach because of the diagnosis of ADHD.

40. In November[ ] 2003[, GAL Ford] withdrew as the Guardian Ad Litem and an Order Appointing [GAL Kean] the sole Guardian Ad Litem was filed on November 20, 2003.

. . . .

43. [GAL Kean's] reports and trial testimony raised concerns regarding [Derek's] parenting style.

44. It is vital that [Child] begin therapy and medication consistent with the expert's recommendations. [Derek] has thwarted those efforts.

45. [Derek's] lack of cooperation appears to coincide with his being in control of situations. Once someone disagrees with him, he uses [Child] to manipulate the situation. [GAL Kean's] reports are replete with examples of that behavior.

46. Dr. Breithaupt could not make an evaluation as to [Derek's] psychological status because [Derek] was non-responsive to a significant portion to [sic] the test. . . .

. . . .

52. Witnesses testified that [Derek] is unable to control his temper and hatred of [Lucie] and anyone connected to [Lucie].

. . . .

55. The Court believes it is inappropriate for [Derek] to allow [Child] to stay up late at night, watch inappropriate adult television shows, be his confidante rather than his daughter, not cooperate with experts in providing her structure, medication for her ADHD, and continued therapy.

. . . .

57. Evidence was introduced at trial that questioned the sincerity of [Derek's] efforts in light of the tone of the e-mails and police reports since [GAL Kean's] report filed July 2, 2004.

. . . .

59. The most important individual in this family is [Child]. It is imperative that she commence her medication and receives therapy, immediately.

. . . .

62. In both of her reports filed with this Court, [GAL Kean] expressed concerns about the behavior of [Derek] and its negative impact on [Child].

. . . .

65. The Court finds that an award of sole legal and physical custody of [Child] to [Lucie] is in the best interest of [Child].

66. The Court finds that implementation of the recommendations included in [GAL Kean's] report is in the best interest of [Child], which shall be implemented.

67. [Derek] should have supervised visitation only with the minor for a six (6) month period. Following the six (6) month period, a review hearing should be scheduled and a report from [GAL Kean] filed one (1) week prior to the review hearing.

. . . .

70. [Child] shall be reevaluated for ADHD and begin taking medication as recommended by child psychiatrist, Dr. Jason Andrus. The recommendations of either [Child's] pediatrician or child psychiatrist shall be followed.

The case was assigned to this court on May 23, 2006.

## POINTS ON APPEAL

The following quotes from the opening brief summarize Derek's points on appeal:

The court erred. First, the findings in the custody point are challenged here. Second, the court made no findings relating to visitation. Third, the court did not find supervised visitation was in the child's best interests or that unsupervised visitation was not in the child's best interests. Fourth, the court did not explain why it denied unsupervised visitation. Fifth, the visitation order was ambiguous, did not appoint a supervisor, did not provide a visitation schedule, and did not describe the conditions of supervision. Sixth, the court improperly delegated its authority and discretion to a supervisor and/or GAL.

. . . .

The court erred. First, the findings in the custody point are challenged here. Second, the court did not find any of these orders are in the child's best interests. Third, these orders improperly delegated parental and court authority over medical, educational and recreational decisions to the GAL. Fourth, when custody in [sic] awarded, a non-custodial parent is not deprived of all supervision over his child's life. . . . Sixth, these orders, along with Father's visitation and telephone restrictions, effectively removed him from his child's life without finding it was in the child's best interest.

Derek contends that the court "did not find that [Derek] was a[n] unfit parent, or that [Lucie] was a better parent than [Derek]", GAL Kean "was biased and neither authorized nor trained to conduct a custody evaluation", and the court disregarded Child's preference for Derek.

Derek argues that the court was not permitted to authorize GAL Kean to determine when, where, and how often supervised visitation or other Child contact with Derek occurs, or to place doctors and/or GAL Kean in charge of decisions regarding Child's medicine, education, and recreation.

## DISCUSSION

Hawai'i Revised Statutes (HRS) § 571–46 (1993 and Supp 2005) states in part:

**Criteria and procedure in awarding custody and visitation.** In the actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:

(1) Custody should be awarded to either parent or to both parents according to the best interests of the child, <u>and the court may also consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;</u>[3]

(2) Custody may be awarded to persons other than the father or mother whenever the award serves the best interest of the child. Any person who has had de facto custody of the child in a stable and wholesome home and is a fit and proper person shall be entitled prima facie to an award of custody;

(3) If a child is of sufficient age and capacity to reason, so as to form an intelligent preference, the child's wishes as to custody shall be considered and given due weight by the court;

(4) Whenever good cause appears therefor, the court may require an investigation and report concerning the care, welfare, and custody of any minor child of the parties. When so directed by the court, investigators or professional personnel attached to or assisting the court shall make investigations and reports which shall be made available to all interested parties and counsel before hearing, and the reports may be received in evidence if no objection is made and, if objection is made, may be received in evidence; provided the person or persons responsible for the report are available for cross-examination as to any matter that has been investigated;

(5) The court may hear the testimony of any person or expert, produced by any party or upon the court's own motion, whose skill, insight, knowledge, or experience is such that the person's or expert's testimony is relevant to a just and reasonable determination of what is for the best physical, mental, moral, and spiritual well-being of the child whose custody is at issue;

(6) Any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change and, wherever practicable, the same person who made the original order shall hear the motion or petition for modification of the prior award;

(7) Reasonable visitation rights shall be awarded to parents, grandparents, siblings, and any person interested in the welfare of the child in the discretion of the court, unless it is shown that rights of visitation are detrimental to the interests of the child;

(8) The court may appoint a guardian ad litem to represent the interests of the child and may assess the reasonable fees and expenses of the guardian ad litem as costs of the action, payable in whole or in part by either or both parties as the circumstances may justify[.]

(Emphasis and footnote added.)

FOF No. 66 suggests that the family court is of the view that, in divorce cases, its powers pursuant to the parts of HRS § 571–46 quoted above include the powers conferred upon courts by (a) the Uniform Probate Code, Part 2, Guardianship of Minor, HRS §§ 560:5–201 through 560:5–210 (Supp. 2005),[4] and (b) the Child Protective Act, HRS

---

**3.** This underlined part was added by Act 244 (2005) effective July 12, 2005.

**4.** Hawai'i Revised Statutes (HRS) § 560:5–208(a) (Supp.2005) states that "[e]xcept as otherwise limited by the court, a guardian of a minor ward has the powers of a parent regarding the ward's support, care, education, health, and welfare."

Chapter 587 (Supp.2005).[5] We conclude that this view is wrong. We further conclude:

■ 1. In a divorce case, the family court is not authorized by statute or otherwise to delegate its decision-making authority to a guardian ad litem;[6]

■ 2. In a divorce case, when the family court orders that one parent "shall have only supervised visitation with" a child, it must be as specific as is reasonably possible regarding the details such as the supervisor(s), the place(s), the day(s) and time(s).

■ 3. In a divorce case, when the family court awards one person "sole legal and sole physical custody of" a child, the family court is not authorized to enter additional orders as if it was the legal and physical custodian of that child. On the contrary, it must allow that custodial person the decision-making authority exercisable by the person who has been awarded the sole legal and physical custody of that child. Although the person who has been awarded visitation rights (the visited person) generally is not required to copy or conform to the custodial parent's method of parenting, there may be situations that require conformity. For example, if the custodial parent has decided on a medical program for that child, the visited person must require that child's participation in that medical program when that child is visiting the visited person.

Accordingly, we vacate the following underlined parts of the December 2, 2004 Judgment:

### A. *Custody/Visitation:*

[Lucie] is awarded sole legal and sole physical custody of [Child]. After due consideration, the court adopts the recommendations of the Guardian Ad Litem (herein-

---

5. HRS § 587–1 (Supp.2005) states:

**Purpose; construction.** This chapter creates within the jurisdiction of the family court a child protective act to make paramount the safety and health of children who have been harmed or are in life circumstances that threaten harm. Furthermore, this chapter makes provisions for the service, treatment, and permanent plans for these children and their families.

The legislature finds that children deserve and require competent, responsible parenting and safe, secure, loving, and nurturing homes. The legislature finds that children who have been harmed or are threatened with harm are less likely than other children to realize their full educational, vocational, and emotional potential, and become law-abiding, productive, self-sufficient citizens, and are more likely to become involved with the mental health system, the juvenile justice system, or the criminal justice system, as well as become an economic burden on the State. The legislature finds that prompt identification, reporting, investigation, services, treatment, adjudication, and disposition of cases involving children who have been harmed or are threatened with harm are in the children's, their families', and society's best interests because the children are defenseless, exploitable, and vulnerable.

The policy and purpose of this chapter is to provide children with prompt and ample protection from the harms detailed herein, with an opportunity for timely reconciliation with their families if the families can provide safe family homes, and with timely and appropriate service or permanent plans to ensure the safety of the child so they may develop and mature into responsible, self-sufficient, law-abiding citizens. The service plan shall effectuate the child's remaining in the family home, when the family home can be immediately made safe with services, or the child's returning to a safe family home. The service plan should be carefully formulated with the family in a timely manner. Every reasonable opportunity should be provided to help the child's legal custodian to succeed. in remedying the problems which put the child at substantial risk of being harmed in the family home. Each appropriate resource, public and private, family and friend, should be considered and used to maximize the legal custodian's potential for providing a safe family home for the child. Full and careful consideration should be given to the religious, cultural, and ethnic values of the child's legal custodian when service plans are being discussed and formulated. Where the court has determined, by clear and convincing evidence, that the child cannot be returned to a safe family home, the child will be permanently placed in a timely manner.

The department's child protective services provided under this chapter shall make every reasonable effort to be open, accessible, and communicative to the persons affected in any manner by a child protective proceeding; provided that the safety and best interests of the child under this chapter shall not be endangered in the process.

This chapter shall be liberally construed to serve the best interests of the children and the purposes set out in this chapter.

6. This is also true in Florida. *See Shugar v. Shugar*, 924 So.2d 941 (Fla. 1st DCA 2006).

after referred to "GAL") as which shall be implemented as follows:

. . . .

(3) Neither party shall discuss the divorce proceedings, court dates or reports with [Child]. Neither party shall make derogatory remarks to [Child] about the other parent or others involved in providing services to the family.

(4) [Child] shall be reevaluated for ADHD and shall begin taking medication as recommended by child psychiatrist, Dr. Jason Andrus. The recommendations of either the child's pediatrician or child psychiatrist shall be followed.

(5) [Child] shall continue an aggressive therapy plan with Dr. Susan Rubenstein. The therapy shall be monitored so that there is no interference from either parent. The parents shall each sign a release for the therapist to receive a copy of their psychological evaluations and a release for all school records.

[Child's] attending doctor shall be able to speak with [Child's] teacher and other school officials. The parties shall cooperate and follow all of the doctor's recommendations.

(6) [Child] shall be encouraged to play soccer, but shall not play on the team coached by [Derek]. [Child] shall play on teams in her own age division. [Child] shall not coach a younger division unless recommended to do so by the GAL.

(7) Both parents shall read the book, "Screen Smarts, A Family's Guide to Media Literacy" by Gloria DeGaetano and Kathleen Bander. In doing so, both parents should become aware of the harmful effects of media and screens including video games, adult television shows and computers.

. . . .

(12) [Derek's] telephone access with [Child] shall be as determined by the GAL.

In all other respects, we affirm. We remand for further proceedings consistent with this opinion.