**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000091**
**08-JUN-2021**
**07:52 AM**
**Dkt. 181 MO**

NO. CAAP-19-0000091

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


JR, Plaintiff-Appellee, v.
IR, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 14-1-7523)


MEMORANDUM OPINION
(By: Ginoza, C.J., and Hiraoka and Wadsworth, JJ.)

This appeal arises out of post-judgment proceedings following the entry of a divorce decree.  Defendant-Appellant IR (**Mother**) appeals from the following three orders entered by the Family Court of the First Circuit (**family court**)[1] in favor of Plaintiff-Appellee JR (**Father**):  (1) the December 17, 2018 "Order Re: Extended Hearing on Motion and Declaration for Post-Decree Relief, Filed April 19, 2018" (**Order Re Extended Hearing**); (2) the January 16, 2019 "Supplemental Order Re: Extended Hearing on Motion and Declaration for Post-Decree Relief, Filed April 19, 2018, Filed December 17, 2018" (**Supplemental Order Re Extended Hearing**); and (3) the January 16, 2019 "Order Re: [Mother]'s Motion for Reconsideration of the Order Filed December 17, 2018 Re: Extended Hearing on Motion and Declaration for Post-Decree Relief, Filed April 19, 2018, [Filed] December 27, 2018" (**Order Denying Motion for Reconsideration**).

---

[1]    The Honorable Gale L.F. Ching presided.

Mother contends that the family court erred in: (1) granting Father's ex parte motion to prohibit Mother from having contact with the parties' minor child (**Child**) and Child's medical providers until further order of the court; (2) granting Father sole legal custody of Child and limiting Mother to supervised visitation with Child; (3) denying Mother access to the Queens Medical Center (**QMC**) records of Child; (4) adopting Findings of Fact (**FOFs**) 11, 12, 15, 16, 24, 31, 35, 38, 48, 50, 89, and 90, and Conclusions of Law (**COLs**) 9, 11, 19, 21, and 24, in the court's May 17, 2019 Findings of Fact and Conclusions of law (**FOFs/COLs**); and (5) granting Father's request for relocation with Child to Massachusetts.

For the reasons discussed below, we affirm the Order Re Extended Hearing, the Supplemental Order Re Extended Hearing, and the Order Denying Motion for Reconsideration.

## I. Background

On April 7, 2017, the family court entered a Divorce Decree, which, among other things, awarded Mother and Father joint legal custody of Child, and granted Father "tie-breaking authority" as to any disagreement between the parties regarding a legal custody decision. Father was also awarded sole physical custody of Child, subject to Mother's right of reasonable visitation.[2]

On April 19, 2018, Father filed a Motion and Declaration for Post-Decree Relief (**Motion for Post-Decree Relief**), by which Father sought sole legal custody of Child and to limit Mother to supervised visitation "until she receive[d] needed mental health treatment." Father also sought the court's permission to relocate to the Boston area with Child "should

---

[2]     Mother appealed from the Divorce Decree and related orders, contending in part that the family court erred in finding that Mother had engaged in parental alienation and in awarding Father sole physical custody of Child. JR v. IR, CAAP-17-0000919, 2019 WL 363471, at *4-5 (Haw. App. Jan. 25, 2019 (SDO). We rejected Mother's arguments and affirmed the Divorce Decree and related orders. Id. at *9. We concluded that substantial evidence supported the family court's findings regarding parental alienation, and that the family court did not err in exercising its discretion in reaching its custody decision. Id. at *4-6.

[Mother] not make current her financial obligations to [Father]." The Motion for Post-Decree Relief was supported by Father's April 9, 2018 declaration describing, among other things, alleged "continued parental alienation behaviors" by Mother. A hearing on the Motion for Post-Decree Relief was scheduled for May 23, 2018.

On May 12, 2018, Mother was personally served with a copy of the Motion for Post-Decree Relief. The same day, Mother brought Child to the QMC emergency room, claiming he was suicidal. Child was admitted to Queen's Family Treatment Center (**QFTC**) for inpatient psychiatric treatment.

On May 14, 2018, Father filed "Plaintiff's Ex Parte Motion to Prohibit Defendant from Having Contact with the Parties' Minor Child and His Medical Professionals Until Further Order of the Court" (**Ex Parte Motion**). The Ex Parte Motion asserted that Mother was mentally ill, had "choreographed a scenario that portrays [Father] as being abusive and a danger to [Child,]" and had put Child at risk of harm, and that it was in Child's best interest that he have no contact with Mother until a family court hearing on the matter. The Ex Parte Motion was supported by Father's May 14, 2018 declaration, which described the events leading to Child's admission to QFTC, and which attached Father's April 9, 2018 declaration as an exhibit. The same day, *i.e.*, May 14, 2018, the family court issued an order granting the Ex Parte Motion (**Order Granting Ex Parte Motion**), in which the court ordered that Mother have no contact with Child or his medical providers until further order of the court, and that the parties be present for a hearing on the matter on May 16, 2018, at 8:30 a.m.

On May 16, 2018, Mother filed her response to the Ex Parte Motion. Mother asserted, among other things, that "CHILD'S physical, medical, and mental health needs have been neglected by [Father,]" and that "CHILD is being subjected to verbal, mental, and emotional abuse, and is currently at risk of self-harm."

On May 16, 2018, the family court held a hearing on the Ex Parte Motion with all parties and counsel present. At that time, the family court entered an order setting an extended

hearing for May 29, 2018 to address the following issues: "a) sole legal custody, b) sole physical custody, c) visitation time-sharing, d) child support, e) child support arrearages, f) payments due per prior court order, g) [Father's] request for [Mother] to advance appellate fees, h) relocation."  The family court also entered an order regarding the Ex Parte Motion (**Order re Ex Parte Motion**), which reflected the appointment of Trina Yamada as Child's guardian ad litem (**GAL** or **GAL Yamada**), and which modified the Order Granting Ex Parte Motion by, among other things, permitting Mother to "have contact and/or visitation with [Child] . . . [and] contact with [Child's] medical professionals only upon the recommendation of [GAL] Yamada."  On May 17, 2018, the family court entered the Order Appointing Custody Guardian Ad Litem (**Order Appointing GAL**), which appointed GAL Yamada, directed her to prepare and file a final report on or before May 23, 2018, and set a conference/return hearing on the report for May 23, 2018 with both parties and their attorneys to appear.

On May 23, 2018, pursuant to the parties' stipulation, the family court continued the return hearing on the GAL's report to June 21, 2018.  At the request of the attorneys, the court also set aside the previously scheduled May 29, 2018 extended hearing date and reset the extended hearing for July 18, 2018.

On June 1, 2018, Mother filed "Defendant's Ex Parte Motion for Immediate Change of Legal and Physical Custody, to Prohibit Plaintiff from Having Contact with the Parties' Minor Child and His Medical Professionals and to Set Aside Order Filed May 14, 2018" (**Mother's Ex Parte Motion**).  Mother's Ex Parte Motion was supported by her May 30, 2018 declaration, which asserted, among other things:

> The Child is being physically neglected and psychologically abused by [Father].  The Child is at risk of self-harm and has failed to thrive under [Father's] care.  [Father] has neglected the Child's basic care, medical, and mental health needs. . . .

Mother's Ex Parte Motion was denied, and the family court "set [the] matter for hearing on July 18, 2018[,] . . . along w[ith the] other motions already scheduled for extended hearing."

4

On June 19, 2018, the GAL filed the Report of the Guardian Ad Litem (**GAL's Report**), which, among other things, described the procedural history of the case, listed twenty-two documents reviewed and twelve contacts made, and set out recommendations to the family court, including that a therapist for Child be selected forthwith. The GAL's Report also recommended that Child should begin contact with Mother, the contact should start with Skype sessions, and the sessions should be monitored by a neutral third person. The GAL's Report further stated that after Child was engaged in therapy and Child was ready, then face-to-face visitation should start.

On June 21, 2018, the family court held the return hearing on the GAL's Report, with all parties present. With the parties' agreement, the court ordered the appointment of Rob Welch, Ph.D. (**Dr. Welch**) as Child's therapist, and approved several conditions of the appointment governing the confidentiality of communications between Child and Dr. Welch. At the hearing, Mother made an oral motion for unsupervised visitation with Child. Consistent with the GAL's recommendation, the family court ordered that Skype visitation between Mother and Child begin that night, supervised by the GAL.

On July 18 and 24, 2018, the family court held a two-day extended hearing on the above-identified matters. The court heard testimony from Father, Mother, Child's physician, the GAL, Child's school counselor, and Father's direct supervisor at work.

On December 17, 2018, the family court issued the Order Re Extended Hearing, which stated in part:

> The evidence further displays a continued pattern of alienation and questionable conduct exhibited by [Mother] at the expense of [Child's] well-being. Given the evidence of [Mother's] conduct since the [Divorce] Decree, it appears that there has not been peace for [Child] to heal from the Parties['] contentious divorce proceedings, [and] the Court finds that it is in the best interest of [Child] that [Father's] request for sole legal custody is GRANTED.

The Order Re Extended Hearing also awarded Father sole physical custody of child subject to Mother's right of reasonable visitation, and granted Father's request to relocate with Child to Massachusetts subject to the timely submission of a relocation report.

5

On December 27, 2018, Mother filed a motion for reconsideration of the Order re Extended Hearing (**Motion for Reconsideration**).  On January 7, 2019, Father filed his memorandum in opposition to the Motion for Reconsideration, and on January 11, 2019, Mother filed her reply memorandum.  On January 9, 2019, Father filed a relocation report, pursuant to the Order Re Extended Hearing.

On January 16, 2019, the family court issued the Supplemental Order Re Extended Hearing and the Order Denying Motion for Reconsideration.  In the Supplemental Order Re Extended Hearing, the family court ordered that Mother's monthly child support obligation remain in effect until otherwise ordered.

On May 17, 2019, the family court issued the FOFs/COLs.

## II. Standards of Review

> [T]he family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawaiʻi 183, 189-90, 20 P.3d 616, 622-23 (2001)).

The family court's findings of fact are reviewed under the "clearly erroneous" standard.  Id.  A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding or, despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made.  Id.  "Substantial evidence" is credible evidence of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.  Id.  "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact."  Id. (quoting Doe, 95 Hawaiʻi at 190, 20 P.3d at 623).

The family court's conclusions of law are ordinarily reviewed *de novo*, under the right/wrong standard, "and are freely reviewable for their correctness." Id. (quoting Doe, 95 Hawaiʻi at 190, 20 P.3d at 623). However, when a conclusion of law presents mixed questions of fact and law, we review it under the "clearly erroneous" standard because the court's conclusions are dependent on the facts and circumstances of each case. Estate of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007) (quoting Thompson v. Kyo-Ya Co., Ltd., 112 Hawaiʻi 472, 474, 146 P.3d 1049, 1051 (2006)). A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned. Id. (quoting Thompson, 112 Hawaiʻi at 474, 146 P.3d at 1051).

### III. Discussion

#### A.    Ex Parte Motion

Mother contends that in granting the Ex Parte Motion and prohibiting Mother's contact with Child, the family court violated Mother's substantive liberty interest protected by article I, section 5 of the Hawaiʻi Constitution. Mother argues that the measures adopted by the family court are usually those reserved for parents who have been found to have committed violence or abuse against their children, and there was no such evidence here. Mother also appears to argue that she was deprived of visitation with Child without notice and an opportunity to be heard.

The Hawaiʻi Supreme Court has recently reiterated:

> Important constitutional interests provide . . . reason for providing parents a full and fair opportunity to present their case in custody decisions. Indeed, a parent's right to the "care, custody and control" of his or her child is a fundamental liberty interest protected by the United States Constitution. Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) ("[T]he interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court."). This court has also recognized that independent of the United States Constitution "parents have a substantive liberty interest in the care, custody, and control of their children protected by the due process clause of article 1, section 5 of the Hawaiʻi Constitution.[ ] Parental rights guaranteed under the Hawaiʻi Constitution would mean little if parents were

7

deprived of the custody of their children without a fair hearing." In re Doe, 99 Hawaiʻi 522, 533, 57 P.3d 447, 458 (2002).

DJ v. CJ, 147 Hawaiʻi 2, 17, 464 P.3d 790, 805 (2020) (quoting AC v. AC, 134 Hawaiʻi 221, 233, 339 P.3d 719, 731 (2014)). The supreme court continued:

> [I]t is axiomatic that a parent's right to the care, custody, and control of the parent's child is a fundamental liberty interest protected by the United States and Hawaiʻi constitutions and entitled to due process protection. In a child custody context, we have specifically stated that the State may not deprive a parent of the fundamental liberty interest in the care, custody, and control of a child
>
> > *without providing a fair procedure for the deprivation*. Furthermore, the Supreme Court has said that parental rights cannot be denied without an opportunity for them to be heard at a *meaningful time and in a meaningful manner*.
>
> In Re Doe, 108 Hawaiʻi 144, 157, 118 P.3d 54, 67 (2005) (emphasis in original).

DJ, 147 Hawaiʻi at 17, 464 P.3d at 805.

We first note that under the Divorce Decree, Father had sole physical custody of Child and tie-breaking authority regarding legal custody decisions when the May 14, 2018 Order Granting Ex Parte Motion was entered. The Order Granting Ex Parte Motion did **not** effect a change in the primary physical or legal custody of Child. Rather, Mother's right of reasonable visitation was temporarily suspended based on the circumstances set forth in Father's May 14, 2018 declaration, *i.e.*, that Mother's continued parental alienating behavior had led to a situation in which, on the day she was served with the Motion for Post-Decree Relief, she brought Child to the emergency room, claiming he was suicidal, and Child was admitted to QFTC for inpatient psychiatric treatment.[3/] In these exigent circumstances, the family court ordered that Mother have no contact with Child or his medical providers until further order of the court, and that the parties be present for a hearing on the matter on May 16, 2018, at 8:30 a.m.

---

[3/] These circumstances are further described in FOFs 39 through 52. Although Mother challenges FOFs 48 and 50, we conclude in Section D, *infra*, that these challenged FOFs are not clearly erroneous.

"[D]ue process is not a fixed concept requiring a specific procedural course in every situation." In re Guardianship of Carlsmith, 113 Hawaiʻi 236, 241, 151 P.3d 717, 722 (2007) (quoting State v. Guidry, 105 Hawaiʻi 222, 234, 96 P.3d 242, 254 (2004)). Rather, due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty interest." Id. (quoting State v. Bani, 97 Hawaiʻi 285, 293, 36 P.3d at 1255, 1263 (2001)); see Doe, 108 Hawaiʻi at 157, 118 P.3d at 67 (parental rights cannot be denied without an opportunity to be heard at a meaningful time and in a meaningful manner).

Here, the family court set a hearing on the subject matter of the Ex Parte Motion to occur within 48 hours of the issuance of the Order Granting Ex Parte Motion. Mother was promptly served with a copy of the Ex Parte Motion and filed a 16-page response on the morning of May 16, 2018, the day of the scheduled hearing. At that hearing, the family court heard the parties' arguments through the parties' respective counsel. Following argument, the family court, among other things, modified the Order Granting Ex Parte Motion by permitting Mother to have contact with Child and Child's medical professionals upon the recommendation of GAL Yamada.

We conclude that under these circumstances, Mother was afforded an opportunity to be heard at a meaningful time and in a meaningful manner with respect to the temporary limitation placed on her right of visitation with Child, and that the family court did not abuse its discretion in granting the Ex Parte Motion.

**B. Change in Legal Custody and Visitation**

Mother contends that the family court erred in granting Father sole legal custody of Child and limiting Mother to supervised visitation with Child. However, Mother presents no argument regarding the alleged error by the court in granting Father sole legal custody of Child. That alleged error is therefore deemed waived. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7); Bettencourt v. Bettencourt, 80

Hawaiʻi 225, 228-29, 909 P.2d 553, 556-57 (1995). Even if the issue was not waived, the FOFs/COLs, discussed in Section D below, support the court's decision to award Father sole legal custody of Child, and we find no abuse of discretion in that decision.

Regarding visitation, Mother contends that at the May 16, 2018 hearing, the family court wrongfully delegated its decision-making power to the GAL. At the hearing, after the parties made their respective arguments, the family court stated:

> The Court has reviewed this matter. Obviously there's no perfect answer to this issue that's before the Court. However, the Court will make the following orders.
>
> . . . [W]hile the minor is at Queen's, the Court understands that there is always going to be some supervision in some form when any parent is with the child, and the Court's going to require that. . . .
>
> The focus at this time is that Ms. Yamada needs to complete her investigation. So the Court will order as follows. The mother will be allowed to have contact with the minor so long as Ms. Yamada has either finished her investigation or has indicated that she is able to do so. In Ms. Yamada's investigation, if she does require observations of Mother and/or Father with the minor, then that will be authorized because she will be there. So the Court does not see any problems with that.
>
> At any time where Mother or Father are with the minor, they are specifically prohibited from attempting to talk about the case with the minor in any fashion.
>
> So the Court understands that the parties will be -- the attorneys will be contacting Ms. Yamada immediately, providing her with whatever materials. Counsels can inform Ms. Yamada that if in her decision or opinion she finds that it is permissible to have Mother have contact with the minor at this time, so long as she's finished her investigation, then she should state that in the report so that the parties can see it in black and white.

Further, the family court's written Order re Ex Parte Motion, entered on May 16, 2018, specified that Mother "may have contact and/or visitation with [Child] only upon the recommendation of [GAL] Yamada[.]" See Kono v. Abercrombie, No. CAAP-11-0000755, 2013 WL 1758960, at *4 (Haw. App. April 24, 2013) (Mem. Op.) (ruling that the circuit court's written order controlled over the court's oral statements; citing numerous cases).

Mother relies on this court's decision in Bencomo v. Bencomo, 112 Hawaiʻi 511, 147 P.3d 67 (App. 2006), for the

proposition that "the family court is not authorized by statute or otherwise to delegate its decision-making authority to a guardian ad litem" and "when the family court orders that one parent 'shall have only supervised visitation with' a child, it must be as specific as is reasonably possible regarding the details . . . ."  Id. at 516, 147 P.3d at 72.  In Becomo, however, the family court issued various custodial orders in a divorce case and delegated complete authority to a GAL to determine telephone visits between father and child.  Id. at 512-13, 147 P.3d at 68-69.

Here, in contrast, the Divorce Decree awarded Father sole physical custody of Child, subject to Mother's right of reasonable visitation, the details of which were specifically set out in the Divorce Decree.  The May 16, 2018 Order re Ex Parte Motion and the May 17, 2018 Order Appointing GAL did not authorize GAL Yamada to change the terms of visitation set out in the Divorce Decree.  Rather, the Order re Ex Parte Motion was akin to a temporary protective order, which made Mother's continued visitation with Child temporarily dependent upon the GAL's **recommendation** (*i.e.,* pending the completion of the GAL's report and the return hearing on the report), subject to further order of the court.  The Order Appointing GAL directed the GAL to prepare and file a final report, with **recommendations**, on or before May 23, 2018.  On that date, the parties stipulated, among other things, to continue the return hearing on the GAL's report to June 21, 2018.  We conclude that in these circumstances, the Order re Ex Parte Motion and the Order Appointing GAL did not improperly delegate the family court's decision-making authority and did not constitute an abuse of discretion.

Mother also contends that when her visitation with Child was allowed to resume, "[r]equiring . . . supervised visitations was an error."  Mother notes that the GAL's Report recommended that Child should begin contact with Mother, the contact should start via Skype, and until Child was actively engaged in therapy, all visitations would need to be supervised.  Mother argues that "[t]he GAL's decision was in error and the GAL should not have been authorized to establish Mother's visitation

11

schedule or choose to limit that visitation as supervised."

However, the GAL did not establish Mother's visitation schedule or assume the family court's decision-making authority to limit visitation.  Rather, the GAL *recommended* to the family court, pursuant to the Order re Ex Parte Motion and the Order Appointing GAL, how Mother's visitation with Child should resume, following the court's temporary suspension of visitation.  On June 21, 2018, the family court held the return hearing on the GAL's Report and consistent with the GAL's recommendation, ordered that Skype visitation between Mother and Child begin that night, supervised by the GAL.  On this record, we cannot conclude that the family court "disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason."  Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (quoting Doe, 95 Hawaiʻi at 189-90, 20 P.3d at 622-23).  Accordingly, we conclude that the family court did not abuse its discretion in ordering supervised visitation in these circumstances.

## C.   Denial of Access to Child's QMC Records

Mother asserts that the family court erred "when it failed to allow Mother to conduct proper discovery to prepare for the hearing to decide the issues raised by Father's Motion . . . for Post-Decree Relief[.]"  More specifically, Mother contends that the family court improperly denied her access to Child's QMC records "that would assist in showing that the treatment [Child] received at [QMC] was reasonable, necessary, and in his best interest."

Mother presents no argument on this asserted point of error.  The issue is thus deemed waived.  See HRAP Rule 28(b)(7); Bettencourt, 80 Hawaiʻi at 228-29, 909 P.2d at 556-57.

To the extent that Mother discusses this issue in her "Statement of the Case," she does not show that the family court erred in denying in part her July 6, 2018 motion to compel discovery (**Motion to Compel**).  "We review a trial court's ruling limiting the scope of discovery under the abuse of discretion standard."  Fisher v. Grove Farm Co., 123 Hawaiʻi 82, 94, 230

12

P.3d 382, 394 (App. 2009) (citing <u>State v. Fukusaku</u>, 85 Hawaiʻi 462, 477-78, 946 P.2d 32, 47-48 (1997)) (reviewing a motion to compel discovery). "An abuse of discretion occurs if the trial court has 'clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" <u>Minton v. Quintal</u>, 137 Hawaiʻi 270, 274, 369 P.3d 853, 857 (App. 2016) (quoting <u>Amfac, Inc. v. Waikiki Beachcomber Inv. Co.</u>, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992)).

Here, the family court decided to redact the QMC records at issue, in Child's best interest, and to provide both Mother and Father with copies of the same redacted records. In addition, Mother's counsel was allowed to speak to any of the QMC medical providers identified in the QMC records. In these circumstances, Mother did not show that the family court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to Mother's substantial detriment. We thus conclude that the family court did not abuse its discretion in denying the Motion to Compel.

**D. Father's Relocation**

Mother contends that the family court erred in granting Father's request for relocation with Child to Massachusetts. In particular, Mother argues there was insufficient evidence to show that relocation was in Child's best interest, and the family court improperly relied on "unfounded evidence of parental alienation" in allowing relocation.

"It is well settled that in child custody cases the paramount concern is the best interests of the child." <u>W.N. v. S.M.</u>, 143 Hawaiʻi 128, 135, 424 P.3d 483, 490 (2018) (citing <u>Doe v. Doe</u>, 98 Hawaiʻi 144, 155, 44 P.3d 1085, 1096 (2002)). Likewise, in cases where one parent wishes to relocate with a child over the objection of the other parent, courts have consistently applied the best-interests-of-the-child standard. <u>DJ</u>, 147 Hawaiʻi at 23, 464 P.3d at 811 ("When one parent requests permission to relocate out-of-state with a child, . . . under Hawaiʻi law, the governing consideration is not a parent's

interests, but whether allowing relocation is in the 'best interests of the child.'" (quoting HRS § 571-46(a)(1))); see Fisher, 111 Hawaiʻi at 50, 137 P.3d at 364; Waldecker v. O'Scanlon, 137 Hawaiʻi 460, 471, 375 P.3d 239, 250 (2016).  HRS § 571-46(b) (Supp. 2017) provides a non-exhaustive list of factors for the family court to consider in determining the best interest of the child.[4/]  "The trial court possesses broad

---

[4/]     HRS § 571-46(b) states:

        (b)    In determining what constitutes the best interest of the child under this section, the court shall consider, but not be limited to, the following:

        (1)    Any history of sexual or physical abuse of a child by a parent;

        (2)    Any history of neglect or emotional abuse of a child by a parent;

        (3)    The overall quality of the parent-child relationship;

        (4)    The history of caregiving or parenting by each parent prior and subsequent to a marital or other type of separation;

        (5)    Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

        (6)    The physical health needs of the child;

        (7)    The emotional needs of the child;

        (8)    The safety needs of the child;

        (9)    The educational needs of the child;

        (10)   The child's need for relationships with siblings;

        (11)   Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

        (12)   Each parent's actions demonstrating that they separate the child's needs from the parent's needs;

        (13)   Any evidence of past or current drug or alcohol abuse by a parent;

(continued...)

discretion in making custody decisions and in its determination of what is in the best interests of the child." A.A. v. B.B., 139 Hawaiʻi 102, 106, 384 P.3d 878, 882 (2016) (citing Fujikane v. Fujikane, 61 Haw. 352, 354, 604 P.2d 43, 45 (1979)).

Here, based on the evidence adduced during the two-day extended hearing, the family court concluded that it was in Child's best interests for Father to be awarded sole legal custody of Child, for Father to have continued sole physical custody of Child, and for Father to be allowed to relocate to Massachusetts (subject to his timely submission of a relocation report). The family court also concluded that it was in Child's best interests to have visitation with Mother, the details of which were specifically set out in the Order Re Extended Hearing. The family court's conclusions are based in part on the following FOFs:

> 10. Father has historically made legal custodial decisions in the Minor Child's continued best interest.
>
> 11. Between the time the parties divorced and the July 18 and 24, 2018 Trial in this matter, Defendant Mother engaged in a continued patter[n] of alienation and questionable conduct regarding the Minor Child that was not in the Minor Child's best interest.
>
> 12. Following the July 24, 2018 Trial date, it is in [Child's] best interests for Father to be awarded sole legal custody of [Child].
>
> . . . .
>
> 15. It is in [Child's] best interest for Father to have continued sole physical custody of [Child].
>
> 16. It is in [Child's] best interests for Father to be allowed to relocate out of the state of Hawaii with [Child] to Massachusetts upon submitting Ordered relocation information to the Court.
>
> . . . .

---

[4]/ (...continued)

    (14)  The mental health of each parent;

    (15)  The areas and levels of conflict present within the family; and

    (16)  A parent's prior wilful misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor. . . .

23. [Child] thrived in Father's care. [Child] raised his Grade Point Average for the academic year to 3.417. He did so well in math that he was recommended for an accelerated math program.

24. Mother used her visitation time with [Child] to try and manipulate circumstances to attempt to develop evidence to support Mother's false allegations that Father was physically abusive to [Child].

. . . .

48. As explained in Report of the Guardian Ad Litem, Mother used false reports of [Child] being a witness to domestic violence as a way to influence medical professionals assessing his mental health. The Report of the Guardian Ad Litem was admitted into Trial evidence. Mother made these false reports to the Queen's Family Treatment Center. She told Queen's that she was a victim of domestic violence by Father and that [Child] reported he was experiencing very similar behavior to what she experienced with Father.

49. Mother's decision to make [Child's] medical care about litigating her false allegations of abuse against Father was part of the decision making for the staff at Queen's which led to [Child's] admission.

50. Mother's fraudulent claim and manipulation of [Child] and the Queen's staff was not in the Child's best interest.

. . . .

55. Ms. YAMADA was also able to observe [Child] with Father during his stay at Queen's. [Child's] behavior and affect with Father was loving, friendly, and affectionate. [Child's] behavior at this time was not consistent with the allegations of Father's abuse.

. . . .

80. As explained in Plaintiff Exhibit 29, at the time of trial, Father was over $250,000.00 in debt, in large part as result of the litigation in this case and Mother's failure to pay her outstanding obligations.

81. Father's testimony that he needed to drastically reduce his cost of living, and stop the escalating litigation costs in this case, so that he would not go bankrupt and be unable to support [Child] is credible.

82. Mother had no incentive to limit the litigation because of cost. She admitted at trial that she was not paying for her representation in her prior appeal and cannot even remember how much she paid for her representation at the recent trial.

83. Father decided that the only way he can reasonably support [Child], pay off his debt and maintain some minimal level of financial security was to move to . . . Massachusetts and live with his parents.

84. Father's parents have a four (4) bedroom home in a beautiful area with plenty of room for Father and [Child]. The home is in an excellent public school district. The

public schools there are better than the public schools available to [Child] in Hawaii. Father would have the financial security of a nice place to live, excellent schools for [Child], and the support of his family while he tries to rebuild a financial future for himself and for [Child].

85. Father's financial stress, while residing in Hawaii, is caused primarily from being forced to litigate against Mother's false allegations. Mother has been ordered to reimburse Father for prior legal fees and has not made payment nor indicated that payment was ever forthcoming.

86. Father's Boss . . . testified that Father was well positioned to smoothly transfer from Hawaii to the mainland. Father's primary job in Hawaii was doing market analysis . . . for the mainland parent company of his Hawaii employer.

87. Father's job was best done from the mainland, close to the markets he was analyzing. If the parent company decided that Father's job needed to be done from the mainland, and Father wasn't allowed to relocate, Father would be unemployed and wouldn't be able to support [Child].

88. After relocation, Father needed to transfer [Child's] medical and mental health care to Massachusetts. There are far more medical and mental health professionals available in Massachusetts than on the Island of Oahu. Massachusetts has some of the finest medical care, hospitals and medical schools in the world.

89. [Child's] relocation away from Oahu is in his best interest. Any detriment to reduction of his in-person contact with Mother is outweighed by the benefit of avoiding further manipulation by Mother.

90. [Child's] continued residence on Oahu puts him in danger of continued manipulation by Mother and places upon Father the burden of being forced to promote the Child's best interest against the perpetual resistance of Mother.

The family court also expressly considered the factors listed in HRS § 571-46(b) in determining Child's best interests, as reflected in COLs 8 through 22, 24, and 25 (which are actually mixed findings of fact and conclusions of law).[5/]

_____

[5/] In COLs 8 through 22, 24, and 25, the family court concluded:

8. Neither Father nor Mother had ever physically or sexually abused [Child] under the terms of §571-46(b)(1), Hawaii Revised Statutes.

9. Mother had engaged in conduct which had the effect of alienating [Child] from Father and was a form of emotional abuse of [Child] under the terms of §571-46(b)(2), Hawaii Revised Statutes.

10. [Child] had a strong, healthy and loving relationship with Father under the terms of §571-46(b)(3), Hawaii Revised Statutes.

(continued...)

17

5/ (...continued)

11. [Child] had an unhealthy, overly enmeshed, relationship with Mother that was putting him at risk for emotional and psychological problems under the terms of §571-46(b)(3), Hawaii Revised Statutes.

12. Father had been [Child]'s primary caretaker since the parties' divorce under the terms of §571-46(b)(4), Hawaii Revised Statutes.

13. Father was more involved in developing and implementing a plan to have [Child] succeed academically, socially and physically under the terms of §571-46(b)(5), Hawaii Revised Statutes. [Child]'s school performance and his motor skills improved when Father had physical custody of [Child].

14. Father made better decisions regarding [Child]'s physical health under the terms of §571-46(b)(6), Hawaii Revised Statutes. He did not use medical professionals to alienate [Child] from Mother. He better implemented recommendations of competent medical professionals.

15. Father made better decisions regarding [Child]'s emotional well-being under the terms of §571-46(b)(7), Hawaii Revised Statutes. Father did not use [Child]'s emotions as a weapon against Mother. Mother tried to control [Child]'s emotions to bring him closer to her and keep him from having a strong and stable relationship with Father.

16. Father was able to keep [Child] safe without preventing him from participating in normal and healthy daily activities under the terms of §571-46(b)(8), Hawaii Revised Statutes. Mother's obsession with [Child]'s physical safety caused her to try and deny him the opportunity to participate in normal, healthy activity.

17. Father was able to support [Child]'s educational success under the terms of §571-46(b)(9), Hawaii Revised Statutes. [Child] did well in school when Father was granted sole physical custody.

18. Mother did not support [Child]'s connection with his paternal family under the terms of §571-46(b)(11), Hawaii Revised Statutes.

19. Mother repeatedly demonstrated that she could not distinguish between her needs and [Child]'s needs under the terms of §571-46 (b)(12), Hawaii Revised Statutes.

20. There was no evidence of drug or alcohol abuse problems for either Mother or Father under the terms of 571-46(b)(13), Hawaii Revised Statutes.

21. Mother's pattern of alienating [Child] from Father and her refusal to accept the reality that Father was not abusing [Child] raised concerns that she had a mental health disorder under the terms of §571-46(b)(14), Hawaii Revised Statutes. There were no mental health concerns regarding Father.

(continued...)

Mother challenges FOFs 11, 12, 15, 16, 24, 31, 35, 38, 48, 50, 89, and 90, and COLs 9, 11, 19, 21, and 24, but she does not provide any argument or basis as to why any challenged FOF or mixed FOF/COL was clearly erroneous. See HRAP Rule 28(b)(7). Instead, she contends generally that FOFs 11, 24, 31, 35, 38, 48, and 50, and COLs 9, 11, 21, and 24 "relate to Father's narrative that Mother was the cause of [Child's] alienating behaviors to Father." She also argues broadly, based on Dr. Reneau Kennedy's September 7, 2016 report and December 1, 2016 trial testimony, i.e., evidence offered at the parties' pre-decree divorce trial, that "a variety of sources contribut[ed] to Child's behavioral response relative to alienation with Father." (Emphasis omitted.)

However, this evidence does not establish that the challenged FOFs and mixed FOFs/COLs were clearly erroneous. See Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360. First, this court affirmed the Divorce Decree and related orders in Mother's prior appeal (see supra note 2), ruling in part that "[t]he Family court's inference from the evidence, i.e., that the Child's behaviors exhibiting parental alienation from [Father] [were] caused in large part by [Mother], is a reasonable inference from the evidence." JR, 2017 WL 363471, at *5. Mother cannot now relitigate this conclusion. Second, the proffered testimony of Dr. Kennedy does not concern Mother's behaviors during the post-decree time period that was primarily at issue during the extended hearing, which was addressed in the challenged FOFs. Third, substantial evidence supports the challenged FOFs and mixed FOFs/COLs, including Father's testimony and the GAL's

___

5/ (...continued)
22. Father is adequately addressing the Child's safety needs under the terms of HRS §571-46(b)(8).

. . . .

24. Mother's pattern of alienating [Child] from Father led to intense family conflict and an inability of the parents to communicate under the terms of §571-46 (b)(15), Hawaii Revised Statutes.

25. Neither party had ever sought protection from abuse pursuant to Chapter 586, Hawaii Revised Statutes under the terms of §571-46 (b)(16), Hawaii Revised Statutes.

testimony during the extended hearing, as well as the GAL's Report.  The family court also heard Mother's testimony, and found that many of her allegations were not credible.  Evaluating the credibility of witnesses and weighing conflicting evidence "is the province of the trier of fact."  Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (quoting Doe, 95 Hawaiʻi at 190, 20 P.3d at 623).  We conclude that the challenged FOFs and mixed FOFs/COLs are not clearly erroneous; they are supported by substantial evidence in the record, and we are not left with a definite or firm conviction that a mistake was made.  See id.

Mother does not challenge other FOFs relevant to the family court's decision to allow Father's relocation, including FOFs 80 through 88.  These FOFs are therefore binding on appeal and support the family court's decision allowing relocation.  See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 458-59, 40 P.3d 73, 81-82 (2002).

Mother also contends that Father did not comply with HRS § 571-46(a) when he failed to submit a parenting plan to the family court with the Motion for Post-Decree Relief.  However, Mother does not point to where in the record the alleged error was brought to the attention of the family court.  See HRAP Rule 28(b)(4).  In addition, Mother presents no argument or authority supporting her contention that this alleged omission warrants vacating the family court's conclusion that it was in Child's best interest to allow Father to relocate to Massachusetts.  See HRAP Rule 28(b)(7).  We thus deem the issue waived.[6]

Accordingly, we conclude that the family court did not abuse its discretion and appropriately considered the best interests of Child in granting Father's request to relocate to Massachusetts with Child.

## IV. Conclusion

For the reasons discussed above, we affirm the following orders entered by the Family Court of the First

---

[6]      We also note that Father complied with the family court's condition that he submit a relocation report to the court within 30 days from the date of the Order re Extended Hearing.

Circuit: (1) the December 17, 2018 "Order Re: Extended Hearing on Motion and Declaration for Post-Decree Relief, Filed April 19, 2018"; (2) the January 16, 2019 "Supplemental Order Re: Extended Hearing on Motion and Declaration for Post-Decree Relief, Filed April 19, 2018, Filed December 17, 2018"; and (3) the January 16, 2019 "Order Re: [Mother]'s Motion for Reconsideration of the Order Filed December 17, 2018 Re: Extended Hearing on Motion and Declaration for Post-Decree Relief, Filed April 19, 2018, [Filed] December 27, 2018."

DATED: Honolulu, Hawaiʻi, June 8, 2021.


On the briefs:

Earle A. Partington and
Clarence S.K. Kekina
for Defendant-Appellant.

Semmes H. Bobo
(Christopher D. Thomas, AAL,
ALC)
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge